## NIXON v. ILLINOIS CENTRAL RAILROAD CO.

[60 South. 566.]

1. RAILROADS. *Injuries to persons on track.   Sufficiency of evidence. Excessive speed.   Peremptory instructions.   Burden of proof.*

In a suit for the death of a party by a running railroad train where it is uncertain from the evidence which of several trains of defendants railroad killed a person on its tracks, and the evidence only clearly exonerates the servants in charge of one of the trains from blame, it is improper to give a peremptory instruction for the defendant.

2. RAILROADS. *Operation.   Excessive speed.*

It is negligence in a railroad company to run its train in the night time at such speed that it is impossible, by the use of ordinary means and appliances, to stop the train within the distance in which the obstruction upon the track can be seen by the aid of the headlight of the engine, and if anything in surrounding conditions and circumstances suggest an increase of care in the operation of a railroad train to avoid peril and damage, the duty to increase such care proportionately increases.

3. RAILROADS. *Injuries to persons on track.   Burden of proof.*

When it is shown that an injury was caused by a running train, it is incumbent upon the railroad company not only to prove just how the injury occurred, but, to entitle it to a peremptory instruction, it must also appear beyond reasonable disputation that its servants were free from negligence in the operation of the train.

Appeal from the circuit court of Panola county.

Hon. N. A. Taylor, judge.

Suit by H. L. Nixon and others against the Illinois Central Railroad Company. From a judgment for defendant, the plaintiffs appeal.

The facts are fully stated in the opinion of the court.

*P. H. Lowrey,* for appellants.

We have in this state many decisions involving the liability of the railroad company for injuries inflicted by running trains, the most recent of which are probably: *N. O. & N. R. R. Co.* v. *Brooks,* 85 Miss. 269; *Y. & M.* v. *R. R. Co.* v. *Landrum,* 89 Miss. 399; *Fuller v.·I. C. Railroad Co.,* 56 So. 783; *Billingsley* v. *I. C. R. R. Co.,* 790.

We also have many decisions involving the liability for negligence in running in violation of the speed limit of six miles per hour in municipalities, notably: *V. & M. R. R. Co.* v. *McGowan,* 62 Miss. 683; *A. & V. R. R. Co* v. *Carter,* 77 Miss. 511; *I. C. R. R. Co.* v. *Watson,* 39 So. 69.

We also have some recent decisions upon our "comparative negligence" statute of 1910: *N. & S. R. Co.* v. *Crawford,* 55 So. 596. I also am informed that there is an unreported case of *McKay* v. *L. & N..R. R. Co.,* coming up from some of the southern counties of the state, decided upon this statute, though I have not seen the record in the case.

This present case is remarkable from the fact that the plaintiffs stand intrenched behind all three of these statutes. I presume probably there is no other case reported in this state, nor probably elsewhere, of exactly this character.. I have found none. We say the plaintiffs are entitled to recover: 1st. Because the injury was by a running train and the defendant has not overcome the *prima facie* liability. 2nd. The injury·was in an incorporated town and the train doing the injury was

running at a much greater speed than six miles an hour. 3rd. Even if the negligence of the deceased were conceded the case should have gone to the jury on the "comparative negligence" statute.

I therefore respectfully submit that under each, either and all of these statutes the judgment of the lower court should be reversed and the case remanded for a new trial.

*Mayes & Mayes,* for appellee.

The fact that the train was running above six miles an hour through Batesville is not a controlling fact in this case. It is perfectly well settled by decisions of this court, that, nortwithstanding the six miles statute, the speed of the train cuts no figure in the case, and imposes no liability unless it appears to be the proximate cause of the injury.

This also is perfectly well-settled law in Mississippi. See *Clisby* v. *R. R. Co.,* 78 Miss. 937, page 947, 948; *Railway Co.* v. *Carter,* 77 Miss. 516; *Howell* v. *R. R. Co.,* 75 Miss. 251; *Crawley* v. *R. R. Co.,* 70 Miss. 340.

It is clear from the evidence that the speed of this train was not the proximate cause of the injury. The situation occupied by the man and the circumstances under which he was killed, show beyond dispute that he would have been killed all the same by a train running six miles an hour.

The counsel for the appellant in their brief admit that the evidence shows that he was sitting down on the crossties, and that means practically over the rail, hunched up and unconscious, whatever might be the cause of his unconsciousness. They propound a theory about his being struck while standing up; but they admit that it is mere theory evolved by themselves and based alone upon the fact that the man's hat seems to have been carried several miles down the railroad by the train, which is a complete *non sequitur*.

The statute in regard to the burden of proof in the case of persons injured by the running of railway trains, so strenuously relied upon by Judge LOWREY, does not control this case for the reasons following:

The fact that the railway train was properly equipped and was carefully run was fully proven, and proven beyond dispute in every particular except that of the speed. It was shown that the machinery was running all right; that the crew were in their places attending to their duty; that the headlight was burning all right; that it was a good headlight, etc.

It is true the fireman was fixing his lamp, but that was his duty, and the man was injured at a place where it was not his business to be on the special lookout. The engineer was on the lookout but the man happened to be on the wrong side for him.

The statute was met in every respect except the matter of speed; and as we have shown above, even if it be true that the restriction of the statute was disregarded in regard to the matter of speed, that fact does not impose liability because the speed was not the proximate cause of the injury. The true proximate cause of the injury was the fact that this man, a trespasser, at four o'clock in the morning, when he ought to have been in bed, was strolling around the right of way not on a public crossing, and took his seat on a crosstie, and there dropped off to sleep, or sunk into a state of stupor, where he was killed. That was the proximate cause of his injury. In fact, it was the sole cause of his injury, because the railroad company was guilty of no negligence, as we have shown above, as to him, it owed him nothing except not to run over him consciously.

In conclusion, it cannot be said that the argument submitted by us above, and our position, is an attempt to avoid or sidestep the statute abolishing contributory negligence as a defense.

We are not relying defensively on this man's contributory negligence. Our position is that there was no negli-

gence shown in the case of the railway company of such
nature as that the plaintiffs are entitled to have it charged
up against the railroad company to begin with.

First. The railroad company owed this man at that
time and place no duty whatever except to avoid injuring
him willfully when he was discovered as a man in peril.

Second. The running at a rate of speed exceeding six
miles an hour cannot be taken as negligence in this case
because it is not shown to be the proximate cause of the
injury.

Therefore, there is no need to appeal to the doctrine
of contributory negligence as a defense. There was no
negligence in the case which was legally imputable to the
railway company as a *causa causans* of this unfortunate
accident.

Argued orally by *P. H. Lowrey*, for appellants.

Cook, J., delivered the opinion of the court.

Sam Nixon was found dead on the railroad right of
way about 5:30 o'clock in the morning. He was undoubt-
edly killed by the running trains of the defendant com-
pany. Suit was brought by the next of kin to the de-
ceased, and upon the conclusion of the evidence at the
trial the court excluded the evidence, and peremptorily
instructed the jury to return a verdict for the defendant,
and plaintiffs appeal to this court.

The defendant assumed the burden of proving just how
the killing occurred, and selected train No. 133 as the one
causing it, which train left Memphis, Tenn., at 2:15 o'clock
a. m. This train was running through the public square
and across the public crossings of the town of Batesville
at the rate of between forty-five and sixty miles per hour,
and, according to the testimony of the train crew, the
station signal was sounded one mile north of town, and the
signals were given for the crossings within the public

square,   The locomotive engineer. of the train testified
that as he got within three hundred feet of the south cross-
ing he saw something near the eastern rail of the road,
which he thought was a hog or dog, and knows he struck
it because it did not have time to get out of the way, and
that it was impossible for him to do anything to prevent
the accident.   The engineer in testifying did some postur-
ing to indicate the thing as it appeared to him.   The next
day about noon he learned that a man had been killed on
the railroad at Batesville the night before.   This, in sub-
stance, is what the engineer said were the facts.   It is
true that he, in speaking of the incident, assumed that
the object which he thought at the time was a hog or dog
was, in fact, a man; but, if we confine his testimony to
what he knew and discard his inferences, we think his
testimony is fairly stated.

No doubt the witness was entirely honest in his con-
clusions, but it is clear his conclusions were not reached
from what he saw at Batesville, but by a process of reason-
ing in the light of after-ascertained facts.   Besides this,
there were other circumstances tending to support the
theory of this witness.   When the train reached the pass-
ing station about fifteen or twenty miles south of Bates-
ville, it was discovered that an iron step suspended from
the crossbeam on the pilot of the locomotive, and extend-
ing down to within six or eight inches of the rail, had been
bent backward at an angle of forty-five degrees, showing
that it had come in contact with something, or something
had come in contact with it—when, how, or where does
not appear.   It is the theory of appellee that this step
struck deceased as he was sitting, or crouching, on the
ends of the crossties, and the force of the impact caused
the bending of the rod supporting it.

The crews of other trains which passed Batesville after
midnight of the day of the killing were also introduced
for the purpose of excluding the idea that some other
train may have struck deceased, but it is the contention
here that train No. 133 is the train which caused the death.

The briefs of counsel on both sides are exceptionally clear, frank, and helpful to the court. Having settled upon the train chargeable with this deplorable event, it is insisted that the train was properly equipped and carefully operated, and therefore it is conclusively demonstrated that appellee's servants were not guilty of negligence.

It is the contention of defendant that the record shows deceased had been drinking heavily, and while in a stupor from the intemperate use of alcoholic stimulants he sat down on the end of the crossties, and was probably asleep when he was struck by the train. In regard to this contention, the evidence discloses that the deceased spent the day before at a political gathering at Courtland, about five or six miles south of Batesville, and there is evidence to support the theory that he had imbibed rather freely during the day and evening. The evidence is in conflict upon this subject, and we are unable to say that the evidence in support of defendant's contention is of that character which would authorize the court to declare the disputed fact established beyond reasonable controversy. There are some proven facts which strongly tend to discredit this theory of defendant.

The plaintiff's theory is that the evidence tends to show that another train killed deceased, and, without referring to the circumstances relied on to establish this theory, it is only necessary to say that there is reason in the contention. If the train which defendant says struck deceased was not the train, the killing is unexplained by the evidence. That train No. 133 was the cause of the tragedy does not seem to be an established fact, as we read the record. In other words, we think the jury could, without doing violence to the record, have come to the conclusion that the engineer's testimony was unconsciously colored by what he had learned after the event, and, by boiling it down to the actually proven facts, it amounted to nothing more than that the engineer saw some object on the edge of the rail which he thought was a hog or dog, and from the fact that a man was killed by

some train passing through Batesville that night, when
testifying, he put the two things together, and was satis-
fied that he was mistaken about the object seen by him
being a hog or dog, but, in fact, it was Sam Nixon, the
deceased.   If the jury could have reasonably reached this
conclusion, it follows that the peremptory instruction
should not have been given by the trial court.

Train No. 133 was running at the rate of forty-five to
sixty miles per hour, and the engineer said, when the ob-
ject on the track came within his vision, it was too late,
for him to make any attempt to stop or check the speed
of the train, and that he did nothing.   In *Railroad Co.*
v. *Moore*, 58 South. 473, 39 L. R. A. (N. S.) 978, the court
said:   "The law is well settled that it is negligence in a
railroad company to run its train in the night-time at such
a speed that it is impossible, by the use of ordinary means
and appliances, to stop the train within the distance in
which the obstructions upon the track can be seen by the
aid of the headlight of the engine, and that, if anything
in surrounding conditions and circumstances suggests an
increase of care in the operation of a rialroad train to
avoid peril and damage, the duty to increase such care
proportionately increases.   Such is in accordance with the
great weight of authority and with the better reason."
The *Moore case, supra,* is almost on fours with this case,
and is the last expression of this court upon the principles
involved in the present case.

When it is shown that the injury is caused by the run-
ning trains, our statute shifts the burden of its exculpa-
tion to the shoulders of the railroad company.   It is in-
cumbent upon the railroad company not only to prove
just how the injury occurred, but, to entitle it to a
peremptory instruction, it must also appear beyond rea-
sonable disputation that its servants were free from negli-
gence in the operation of the train.

The evidence in the present case does not comply with
the rule, and the case must be reversed and remanded.

*Reversed and remanded.*