HANCOCK *v.* ILLINOIS CENTRAL R. CO.

(Division A. November 24, 1930.)

|131 So. 83. No. 28882.|

Jere Horne, of Memphis, Tenn., and **Logan & Barbee,** of Hernando, for appellant.

672

May, Sanders, McLaurin & Byrd, of Jackson, and Chas. N. Burch, of Memphis, Tenn:, for appellee.

Argued orally by **Jere Horne**, for appellant, and by **J. O. S. Sanders**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

The appellant sued the appellee in the court below for the death of his mother, who was struck and killed by

one of the appellee's trains. At the close of the evidence the court below directed the jury to return a verdict for the appellee, and there was a judgment accordingly.

The essential facts disclosed by the evidence are, in substance, as follows. The appellee's railroad runs north and south through the village of Coldwater, and is crossed nine hundred fifty-five feet south of the south end of its station house by a state highway, designated within the corporate limits of Coldwater as Church street. At this intersection, and about fifty feet east of the appellee's right of way, there is a stop sign in accordance with the requirements of section 2, chapter 320, Laws of 1924, Hemingway's 1927 Code, section 7965, Code of 1930, section 6123, which is clearly visible for some distance before it is reached by persons approaching it from the east. When the front end of an automobile going west is even with this sign, a person sitting therein on the front seat of the automobile has a clear view up the railroad track to the north for a distance of four hundred thirty-five feet, and, when the seat of the driver is even with the sign, the driver has a clear view up the railroad track to the north for a distance of one thousand eight hundred feet. In December, probably the 26th day thereof, the appellant's mother attempted to drive an automobile across the appellee's railroad at Church street, and was struck and killed by one of the appellee's south-bound trains. She did not stop the automobile before going on the railroad track, and, had she looked up the track to the north before driving onto it, she would have seen the approaching train, and, had she listened, she would have heard its bell and whistle.

The jury would have been warranted in finding that the train was traveling in excess of fifty miles an hour when it struck the automobile. The bell on the engine of the train was being sounded continuously as it approached the crossing by an automatic bell ringer, and

the whistle was being sounded also practically continuously.

The engineer testified that he was at his post on the west side of the engine cab looking ahead as the train approached the crossing; that his view of the crossing was obstructed to the east by the engine, and that he did not see the automobile when it came on the track, but heard or felt the collision and stopped the train immediately. The fireman, whose post was on the east side of the engine cab, saw the automobile as it approached the track, but supposed, until it passed the stop sign, that it would not go thereon, and, when he realized that its driver did not intend to stop, he immediately tried to signal the engineer, but failed to attract his attention on account of the noise of the engine. Had he attracted the engineer's attention, it is hardly probable that the speed of the train could have been sufficiently lowered in time to avoid the collision.

The railroad commission has restricted the six-mile speed limit for trains within the corporate limits of a municipality provided by section 4043, Code of 1906, section 7894, Hemingway's 1927 Code, to an area in Coldwater considerably less than the municipal limits. Church street is not within this restricted area, but the rear of the train was therein when the engine by which it was being pulled struck the automobile which the appellant's mother was driving.

The evidence does not disclose whether the highway at the crossing is traveled much or little, or whether the territory contiguous thereto is thickly or sparsely settled.

During the progress of the trial, the court, over the objection of the appellant, permitted the appellee to file a special plea setting forth this restriction on the speed limit area within the municipality of Coldwater. Assuming that this plea was necessary in order for the appellee

to avail itself of this restriction on the speed limit area, the court committed no error in permitting it to be filed.

The appellant contends that the case should have been submitted to the jury for two reasons: First, the train was exceeding the statutory speed limit of six miles per hour when it struck the automobile; and, second, under the common law it was negligence for the train to approach the crossing at the high rate of speed at which it was then running.

This court has several times held that the purpose sought to be accomplished by the six-mile speed limit statute is to prevent injuries to persons and property situated within the speed limit area and not to persons or property situated without such area, and that it has no application to an injury inflicted before a train enters or after it leaves a restricted area, although in close proximity thereto. It is true that in all of these decisions no part of the train was within the restricted area; but that a portion of the train was within such an area at the time an injury was inflicted can be of no consequence, for the statute protects only persons and property that are within this area.

"A railroad company is bound to take such reasonable precautions for the safety of travelers at public crossings as ordinary prudence would indicate." 22 R. C. L. 988. But "in the absence of a statute or of a duly authorized municipal ordinance placing a restriction upon the rate of speed at which railroad trains may be run, no rate of speed at crossings is negligence per se. The very purpose of locomotion by steam upon railways is the accomplishment of a high rate of speed in the movement of passengers and freight, and this the laws authorizes. To require railroads generally so to reduce their speed at all grade crossings as to avoid collisions with persons who may, carefully or accidentally, be upon the crossing when a train is approaching would defeat, to a great extent, the purpose of the existence of railroads. This rule

is obviously rather an abstract one, and yields in concrete instances in which other circumstances than the rate of speed appear." 22 R. C. L. 1011.

It might be, and in most cases probably would be, negligence, or rather the jury could so find, for a railroad train to approach a highway crossing at a high rate of speed in the absence of proper precautions to warn travelers on the highway of its approach, or if the topography of the country or physical or atmospheric conditions at the crossing are such as to interfere with the efficacy of such warnings. But here no such physical or atmospheric conditions existed, and the appellee's employees in charge of the train kept a proper lookout, had an unobstructed view along the track, and sounded all necessary bell and whistle alarms. In addition, as hereinbefore stated, there was a stop sign to the east of the track, as required by the statute, from which there was an unobstructed view up the track for one thousand eight hundred feet in the direction from which the train was coming. A traveler on a highway should not, and ordinarily has no legal right to, ask for more.

We are not here dealing with a street shown to be crowded or much used, and express no opinion on a case including that element.

In Hines v. Moore, 124 Miss. 500, 87 So. 1, relied on by counsel for the appellant, the accident probably occurred in a thickly settled district where "a store and perhaps other objects obstructed the view of the driver of the automobile until he came upon the railroad right of way," and there was evidence that no signals were given as the train approached the crossing.

Affirmed.