## FLYNN *v.* KURN *et al.*

(Division A. Oct. 31, 1938.)

[184 So. 160. No. 33244.]

414

Geo. T. & Chas. S. Mitchell, of Tupelo, for appellant.

416

**C. R. Bolton**, of Tupelo, **D. W. Houston, Sr. & Jr.**, of Aberdeen, and **Joseph W. Jamison**, of St, Louis, Mo., for appellees.

418

Argued orally by **Geo. T. Mitchell**, for appellant, and by **D. W. Houston**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

The appellant sued the trustees of the above named railroad company for damages for personal injury alleged to have been sustained by a collision of a train of the railroad with the automobile of Flynn at a grade crossing. On making up the issues of the court, the evidence was heard and the jury rendered a verdict of $1500 against the trustees of the railroad and Crump as co-defendant. Appellant prosecuted an appeal from that judgment, and the trustees of the railroad have filed an assignment of error on cross bill in this court.

The general statement of the case is that about two o'clock in the morning, Flynn, the owner of the car, was riding in his automobile from Holly Springs to his home in Tupelo; at the time of the collision, Crump was driving the automobile and had been for some time. The ap-

pellant's evidence was directed to two points; that the railroad train was being operated at an excessive and dangerous rate of speed approaching a regular crossing on a public highway, Number 78, located in the Town of Sherman; the railroad runs practically north and south, and the highway across the railroad east and west at right angles. Flynn and Crump were traveling to the east. This crossing is about a half mile north of the depot on the west side of the railroad. It is undisputed that there were no obstructions, and the train in question could be seen at least one-half mile at or near the crossing, and a man standing on the track could be seen from a point on the highway two hundred and fifty feet west for a distance of five hundred yards. Their contention was, according to the evidence, that the train was being operated at a terrific rate of speed. Crump testified his estimate was about sixty miles, although he only saw the train when it was within two hundred feet of him. The conductor on the train estimated it was running fifty-five miles, the engineer to forty or forty-five, and the fireman to thirty-five to forty miles an hour. By appellant's evidence, there were four witnesses who testified that the statutory signals were not given, as required by Section 6125 of the Code of 1930. There is no evidence as to how thickly settled the Town of Sherman is about this crossing. One witness testified that on the old branch of Highway No. 78, there was a good deal of travel. Flynn testified that he was thrown from the automobile and received severe injury, expended considerable sums in a hospital for hospital fees, and that services of a physician, who was a specialist, were required. He and Crump were picked up by the train employees and carried to Tupelo in an ambulance to a hospital, from which he was discharged in about two days. Later, he went to Dr. Hill's Clinic in Memphis, and there remained for a considerable time. Suffice it to say that the evidence offered for appellant tended to show that he suffered a permanent injury, which would make him

a cripple for life, unless a major operation was performed, which was expensive, and the outcome of which was, by the surgeon, not certain.

For the appellee, the railroad, the evidence tended to show that Crump and Flynn drove the car at a rapid rate of speed, stopped it suddenly on the track, and Crump, the driver, was seen to close the door of the automobile and walk away to the west side, that the reflection from the light of the engine shone through the windows of the automobile, and the engineer saw no other person in or about the automobile before he struck it. There is no contention that either Flynn or Crump stopped, looked or listened, although the Mississippi Stop Law Sign was placed on the highway on both the east and west side. The engineer and fireman testified positively that the standard bell, weighing more than thirty pounds, was rung continuously for a greater distance than three hundred yards above the crossing, and continued to ring until the engine stopped about six hundred feet south of the crossing. The engine carried the automobile that distance below the crossing, and when stopped, the automobile was on fire. The railroad introduced expert evidence, by X-ray examination, in conflict with that of Dr. Hill, in which he said that there was no injury whatever on the body of appellant, and there was sharp straight contradiction by the two physicians who looked at the same X-ray picture. Six witnesses testified that they knew the general reputation of Crump, that it was bad, and from that they would not believe Crump in a court of justice. Likewise, a number of witnesses were introduced to the same effect as to the general reputation for truth and veracity of Flynn. In rebuttal, an equal number of reputable witnesses testified that Flynn's reputation for truth and veracity was good, and that they would believe him on oath. Other facts will be stated in connection with the points raised on this appeal.

On the cross appeal, appellee, the railroad, assigns as

error the refusal of the court to grant it a peremptory instruction.

The court submitted the case to the jury only on the negligence of the railroad in failing to give the signals. We have stated enough of the evidence to show that there was sharp conflict, and all the argument on this question here might well have been addressed to the jury. On a sharp conflict of the evidence, the court could not grant a peremptory instruction, notwithstanding the contradictions, which are about as usually appear in this class of cases.

The argument in the brief on the cross appeal of appellee is to the effect that the verdict is against the overwhelming weight of the evidence. We can not consider this argument on appeal, for the reason that the appellee did not make a motion for a new trial in the court below. Coccora v. Vicksburg Light & Traction Co., 126 Miss. 713, 89 So. 257, St. Louis & S. F. Ry. Co. v. Bridges, 156 Miss. 206, 125 So. 423, and Justice et al. v. State, 170 Miss. 96, 154 So. 265. So, on the cross appeal, the case will be affirmed.

On the direct appeal of Flynn, it is earnestly argued that the court below erred in granting the railroad company a peremptory instruction as to the speed of the train.

None of the evidence in this case discloses any unusual condition existing at this grade crossing, located within the corporate limits of the Village of Sherman, but the order of the Railroad Commission shows that the six mile limit was to apply on, as to this case, as far as two hundred feet north from the depot. This collision occurred much beyond the six mile limit fixed by the Railroad Commission. The only evidence as to this ground of negligence is that there was "a good deal" of travel on the old fork of Highway 78, although many witnesses testified that in dry weather, the newly constructed 78 was much traveled, and had been for some time. The evidence which we have quoted does not come within the

rule which obtains in this State with reference to the operation of a locomotive and train over the public road crossings. This collision occurred after midnight, at two o'clock in the morning. The train was a fast passenger train of the railroad. It had a fast schedule. The purpose of operating it was to facilitate with rapidity the transfer of passengers and commerce from one point to another. The general statement that Highway 78 was frequently traveled does not show any peculiar or unusual condition at this grade crossing in this village from that which obtains on this character of highways throughout the State.

(1) The appellant, Flynn, relies strongly upon the case of Illinois Central R. Co. et al. v. Williams, 144 Miss. 804, 110 So. 510, where a child two years old was struck in the daytime on a public crossing which was much frequented by the traveling public at that point (near the depot), and it appeared from the facts that cars were parked which obscured the engineer's vision of the approach to the crossing so that he could not see the older sister of the little child waving it not to come across. In that case, the speed of the train was held by the court to be an element, together with the fact that the railroad company had violated its own rules by the parking of cars near the depot and the crossing, which prevented the engineer from seeing the approaches to this crossing. We think this case is controlled by the case of Hancock v. Illinois Central R. Co., 158 Miss. 668, 131 So. 83, 84: "To require railroads generally so to reduce their speed at all grade crossings as to avoid collisions with persons who may, carelessly or accidently, be upon the crossing when a train is approaching would defeat, to a great extent, the purpose of the existence of railroads." This rule is specifically abstract and yields in concrete cases in which other circumstances than the rate of speed occurs. 22 R. C. L. 989 (1101).

There was nothing in the topography of the country, no physical or atmospheric conditions at the crossing

such as to interfere with warnings in the case at bar. See, also, New Orleans & N. E. R. Co. v. Holsomback, 168 Miss. 493, 151 So. 720; New Orleans & N. E. R. Co. v. Wheat, 172 Miss. 524, 160 So. 607; also Mobile & O. R. Co. v. Bryant, 159 Miss. 528, 132 So. 539.

There is nothing in this record to show that the engineer did not exercise every power at his command after discovering that Flynn and Crump were proceeding to drive upon the track in the face of the oncoming train.

(2) Insofar as physical injuries are concerned, on the argument that the damages are inadequate, which are so strenuously urged, if the jury believed the evidence offered on behalf of the plaintiff, it would have found that he had suffered excruciating pain, was still unable to walk without the assistance of a cane; that when he was carried to the hospital, the body could not be straightened by the surgeons without resorting to mechanical means, that the X-ray examination of Flynn revealed that he had suffered a fracture of the right pelvis; and he expended the amount awarded in hospital and surgeons fees. On the other hand, if the jury believed the physician and other evidence offered by the railroad company, they are to conclude that he was malingering and had suffered no injury, so that the amount and extent of his injuries was a question for the jury.

(3) It is next insisted that the court erred in peremptorily instructing the jury that Crump, the driver of the car, was guilty of gross negligence in driving on the track without stopping, looking and listening, and that this negligence of Crump was imputable to Flynn; and that Crump was the servant or agent of Flynn at the time he drove upon the track. The evidence indisputably shows that the automobile, at the time of the collision, was being driven by Crump, with the permission, and in the interest of Flynn, the owner thereof, who was seated by him in the automobile; and the relationship between the parties made Crump a gratuitous servant or agent of Flynn in such a case. If Crump had driven

the car negligently so as to injure some other person or property, the authorities are universal that Flynn, the master or principal, would be liable for all such damages. We so held in the recent case of Atwood v. Garcia, 167 Miss. 144, 147 So. 813, on the general principle that he who acts through another is himself the actor. Flynn must have imputed to him the negligence of the servant in driving upon this crossing in the manner we have detailed.

(4) Appellant, Flynn, invokes the rule that a guest is bound only after seeing danger to remonstrate with the driver, and calls attention to his evidence that at the time Crump so drove the car as to have him believe he was stopping the car, and in a second speeding the car upon the track; and he had no opportunity to warn. The trouble with this position is that this rule is applicable to guests only. It is impossible to say that Flynn was his own guest on this occasion.

(5) It is next insisted that the court committed a reversible error which affected the measure of damages, in that while Flynn was on the witness stand an agreement was entered into by counsel before the court that Drs. Hill and Stacey would make an X-ray picture of Flynn without objection by him. They so did, and while offered as evidence in chief, Dr. Hill testified that the pictures so made while the trial was in progress showed a fracture of the bone and he knew that Dr. Stacey would differ with him and say there was no fracture but an exostosis. Some time during the trial after the Hill-Stacey examination, Dr. Hill, in company with Dr. Toomer, made still another X-ray examination after appellant had rested his case, and while the railroad was offering its witnesses there was an interruption and the court heard, out of the presence of the jury, Dr. Toomer and Dr. Hill as to this X-ray made jointly by them, which they testified showed a fracture of the bone. The court excluded this evidence on the ground that it was evidence in chief, and would not permit either Toomer or

Hill to testify relative to this last X-ray picture, as not being in rebuttal but evidence in chief. Subsequent to this action of the court, Dr. Stacey, on behalf of the railroad company, testified that the X-ray pictures made by Dr. Hill at his clinic and offered in his evidence in chief, and the X-ray picture made by him and Dr. Hill jointly did not disclose any fracture of the bone, and that no such suffering would ensue from what was shown by the X-ray as had been testified to on behalf of Flynn. The excluded evidence offered was evidence in chief, and was cumulative evidence of that which Dr. Hill had already said. The only purpose accomplished would be that Dr. Toomer, a local physician, would, by his testimony, agree with Dr. Hill.

We can not say that there was error in the action of the court. There must be a time somewhere when the court has the power to limit and require orderly procedure.

"The order of judicial investigation, including the time and manner of introducing evidence, is, and of necessity must be, committed to the sound discretion of the trial judge; and appellate courts should not interfere to reverse the exercise of this discretion by a trial court unless such exercise appears to have been had arbitrarily, capriciously, or unjustly." See Winterton v. Illinois Cent. R. Co., 73 Miss. 831. 20 So. 157, 158. We can not say in the case before us the court so acted herein.

Generally, we will say that it was the duty of the jury to compare and allocate the negligence of appellant and appellee under instructions of the court. We cannot disturb the verdict. See Sec. 511, Code 1930. We do not find reversible error in this record.

Affirmed on direct and cross appeal.