ALABAMA GREAT SO. R. CO. *v.* MARTIN.

In Banc. Mar. 28, 1949.

(39 So. (2d) 501)

852

Cameron & Wills, for appellant.

854

Gillespie & Minniece, for appellee.

858

Roberds, J.

Martin, as plaintiff, seeks in this action to recover of appellant, defendant below, the value of an automobile, the property of Martin, alleged by plaintiff to have been

negligently struck and demolished by a passenger train of the Railroad Company. The jury found for plaintiff in the sum of One Thousand Dollars, and the Railroad Company appeals.

It contends on this appeal (1) that no negligence is shown on its part; (2) that appellee is estopped to maintain this action; and (3) that the right is barred by the six-year statute of limitation.

We have concluded the first contention is well-taken, and, therefore, we decide no other.

The grounds for negligence, as charged in the declaration, were (a) the train was running at too fast a speed; (b) that the Railroad Company negligently failed to maintain a proper crossing; and (c) the engineer failed to keep a proper lookout and stop his train before hitting the automobile.

■ ■ As to the first ground, the train was running about sixty miles per hour. The crossing where the accident happened was a private crossing, some four miles northeast of the City of Meridian. The evidence discloses no reason, based upon statute, ordinance or fact, indicating that a speed of sixty miles per hour by a passenger train, at the place and under the circumstances here shown, was unlawful or constituted negligence.

■ ■ As to the manner of maintaining the crossing, the declaration alleges that the approach to the crossing from the public highway was too sharp, making it difficult for a motorist to enter upon the crossing, and also that the width of the crossing way was too narrow. There is no proof the approach was not a proper approach. The roadway over the crossing was ten feet wide, amply sufficient to enable an automobile to traverse the same, if properly driven. We do not decide whether the Railroad was, or was not, under duty to maintain this crossing. That is not necessary. No negligence is shown in such maintenance, assuming the duty did exist.

On the question whether negligence is shown in the failure of the engineer to detect the automobile on the

track and stop his train, these are the undisputed facts, all brought out in the evidence on behalf of the plaintiff:

This is a two-track railroad. North-bound trains operate on the south track, and southbound trains run upon the north track. At the point of the accident, the tracks lie almost east and west, although the general direction of the railroad is northeast and southwest. United States Highway 80 runs parallel with, and is adjacent to, the south side of the south railroad track. The distance from the north line of the highway pavement to the south rail of the south railroad track is 72 feet. The dwelling of W. E. Brown and family is located 245 feet north of the north rail of the north track. Brown owned 77 1/7 acres of land, on which he operated a dairy, lying north of, and adjacent to, the north right of way of the railroad. It appears the railroad crossing is maintained principally, and perhaps exclusively, for the use and benefit of Brown. For a distance of near a half mile west from the crossing the track is practically straight. About, or just east of the crossing, going east, the railroad curves slightly to the right, or south, and the public highway, following the contour of the railroad, curves to the north or right, as one travels west thereon.

The automobile, although owned by Martin, was, at the time of the accident, being driven by W. F. Amason, by permission, but not as the agent, of Martin. Apparently Amason, in attempting to enter the crossing from the highway, had gotten too far west and partly missed the crossing way. The car was headed north towards the Brown residence. It was upon the south track. The left rear wheel thereof was between the crossties, and up against the south side of the south rail. It had cut deep into the cinders between the crossties as a result of being rapidly spun for some time. A block railroad signal is located approximately a quarter of a mile west of this crossing.

Mrs. W. E. Brown testified that she was awakened in her home about 1:30 o'clock in the morning by the racing

of the engine of this stalled automobile; that she got up and saw the car on, or near, the track; that the headlights were then burning and were shining in her bedroom. However, before the accident occurred some two hours later, she had gone back to sleep and did not know whether the car lights were burning when the accident occurred.

The passenger train which hit and demolished the automobile left Meridian at 3:15 A.M. The accident occurred about 3.23. The bell had constantly rung since leaving Meridian. Proper whistle signal was duly given for this crossing. The engineer testified that as he approached this crossing, he first noticed the block signal, as was his duty; that as he began to look beyond this signal an automobile, going west on the public highway, came over an incline, or as was described, a "knoll" near, or opposite, the railroad crossing, and the bright lights from this automobile blinded him until the train and car met and passed, the curve in the railroad and public road inevitably causing the automobile lights to shine directly into his eyes; that immediately the automobile lights ceased to blind him he saw something upon the track at this crossing; that instantly on detecting this object, he applied his brakes and did everything possible to stop, or check the speed, of the train, consistent with safety for his passengers, but he was too close to the crossing for the train to be stopped. He did everything that could be done under the circumstances to detect anything upon the track, and to avoid the accident.

If liability exists here, it is because the engineer did not use reasonable diligence to detect the automobile upon the tracks in time to stop and avoid the accident. It was his duty to use such care. Hines v. Moore, 124 Miss. 500, 87 So. 1. It is not contended any duty rested upon the fireman, under the circumstances here, to keep a lookout at this crossing. Yazoo & M. V. Ry. Co. v. Lum, 191 Miss. 170, 2 So. (2d) 561. ██ █ Whether the lights of the approaching automobile, blinding the

engineer, be deemed an independent cause, or whether simply an element in determining whether the engineer used reasonable care, the result is the same as to liability of the defendant. Under the first theory, the Railroad was in nowise responsible for the existence of the lights; and under the second theory, the lights created an effective, unavoidable, independent condition resulting in the inability of the engineer to see the car on the track. In any event, it is shown, without dispute, the engineer did all he could. It should be kept in mind also that this was the proof of the plaintiff. It was his case. Nor is there any claim, or intimation, that these are not the true facts. The engineer was not a party to the suit. He was not called as an adverse witness. He was used to make out the plaintiff's case.

But, it is argued by appellee that whether the engineer saw, or, by the use of reasonable care, could have seen the headlights of the stalled car as they shone towards the Brown residence, was a question which should have been submitted to the jury. There are three answers to that contention. The first is, the approaching automobile lights, blinding the engineer, had the same effect on his ability to see the stalled car lights as to see the stalled car itself. The second is, that had the lights been burning on the stalled car, and had the engineer seen them, their existence would not necessarily have demonstrated to the engineer the car was standing on the track. The conclusion the car was moving across the tracks north would have been as logical, perhaps, as that the car was standing still. ██ █ And the third, and all-sufficient answer, is that there is no proof the lights were burning on the stalled car when it was struck by the train. Mrs. Brown said they were burning when she went back to sleep, but she did not know how long that was before the accident, and, naturally, did not know whether the lights were burning when the accident occurred. On the other hand, the engineer said he did not

see any lights on that car, and his judgment was no lights were burning.

Reversed and judgment here for appellant.

**Alexander, J.** (dissenting).

I am of the opinion that this case involves the doctrine of the last clear chance, and that it was for the jury to say whether the engineer failed to see what he ought to have seen, and by the use of reasonable care could have seen.