New Orleans & Northeastern Railroad Company, et al.
*v.* Phillips

No. 43366 March 1, 1965 172 So. 2d 414

*Melvin, Melvin & Melvin,* Laurel; *Winston Cameron,* Meridian, for appellants.

*Maxey & Clark,* Laurel, for appellee.

ETHRIDGE, J.

Mrs. Jewell Phillips, appellee, brought this action in the Circuit Court for the First Judicial District of Jones County, on behalf of herself and her adult daughter, for the alleged wrongful death of their husband and father, Otis Phillips. The defendants (appellants here) were the New Orleans & Northeastern Railroad Com-

pany and its engineer, S. E. Holifield. The jury gave plaintiffs a verdict of $75,000, and Railroad and Holifield appealed.

Phillips was killed at night by a freight train while he was sitting in an automobile stalled on a crossing of a railroad and gravel road in a small, unincorporated community. There were five charges of negligence against defendants: (1) improper maintenance of the crossing; (2) excessive speed; (3) failure to keep a proper lookout; (4) failure to keep locomotive under reasonable control; and (5) violation of the Bell and Whistle Statute. Appellants also contend that Phillips was dead before the train hit him. We reverse and remand for a new trial, because the verdict is against the great weight of the evidence, particularly on the issues of speed, lookout and control.

## I.

Otis Phillips was fifty-two years of age at the time of his death on February 22, 1962. He was apparently in good health, and although unemployed at the time, he had worked for eleven months the preceding year for an oil field contractor. He and his wife lived near Moselle in Jones County. Mrs. Phillips last saw him around 5:45 p.m. that day, when he left the house in his automobile. The wife's nephew, Richard Sellers, and Phillips next appeared around 7:00 p.m. at the Colonial Club, where they had hamburgers and two beers each. Lee Crosby, proprietor of the club, said that Phillips remained there about forty-five minutes, leaving Sellers at the bar. Phillips got in Sellers' automobile and drove away. After fifteen to twenty minutes, Sellers found his car was gone. At Sellers' request, Crosby called the highway patrol to report the missing automobile. It was destroyed when the train hit it.

The accident happened where a rural gravel road crossed the railroad track about nine miles north of the

City of Hattiesburg. There were four road crossings in the unincorporated community of Eastabutchie. This one was known as the North Eastabutchie crossing, and was one-half mile above the next one to the south.

Mrs. William D. Davis, a witness for defendants, became seriously ill shortly before the trial, and was unable to testify. Defendants' motion for a continuance was overruled. There was an agreement between counsel for both sides that, if she were present, she would testify as follows, and this testimony would be true and correct: On the night in question, Mrs. Davis got off from work at the Methodist Hospital at 11:00 p.m. She drove north on U. S. Highway 11, which paralleled in part the railroad right-of-way, to her home at Eastabutchie. She got her colored babysitter and drove her home. On her way back home, she drove over the North Eastabutchie crossing, which was the one where the automobile occupied by Phillips was struck that evening. She saw a black automobile parked straddling the railroad track, partially off of the right edge of the road. She had to swing to her left to pass by it. This car did not have any lights on it, and she could not tell whether it had an occupant, although she did not see anyone around it. Mrs. Davis went over this railroad crossing sometime after 11:30 p.m. (The collision happened at 11:50 p.m.) She then drove to her home located south and west of the crossing, where she undressed and went to bed.

Plaintiffs further admitted that, if Mrs. Davis were present she would testify as follows, but they did not admit that this was necessarily true: At about the time she got into bed, she heard a railroad train approaching from the south going toward the North Eastabutchie crossing. The whistle of the train was blowing for all of the crossings, including the north one.

The only eyewitnesses of the train's collision with the car occupied by Phillips were the three crewmen, an engineer, fireman, and road foreman of engines, in

the cab of the front locomotive. It was a long freight train, pulled by 6 diesel units, and containing 129 loaded freight cars, 37 empty freight cars, and a caboose. It was between 1½ to 2 miles in length, and had a gross weight of 8800 tons. The train left New Orleans around 8:00 p.m., and was running between 40-42 miles per hour on an almost level grade. It was equipped with a standard bell, a headlight shining straight ahead, enabling the engine men on a straight track to see 1/2 mile, and an air horn or whistle which could be heard 1½ to 2 miles on a quiet night. The entire train was equipped with air brakes in good condition. The locomotive units were pulling hard to maintain a speed of 42 miles per hour, as the front of the train approached the crossing in question. The engineer, appellant S. E. Holifield, was sitting on the right side of the front unit. The fireman, J. F. Stampley, rode on the left side, and M. C. Payne, road foreman of engines, was standing in the cab and looking ahead.

These three members of the train crew testified that the track was in a north-south direction. In a 60 mile per hour zone for freight trains, fixed by the railroad, this train was moving at 42 miles per hour in a northerly direction, but was coming around a curve in the track to the right. The gravel county road crossed the track in an east-west direction, but approached and left the track in a curve. About 200 feet west of the crossing, running north and south, was U. S. Highway 11. Since the train was coming north around a curve in the track, its headlight did not shine on the crossing until the train got within 300 feet of it. Immediately at that point the engineer put the brakes in emergency, and did everything possible to stop. The car was sitting across the track. It was black and had no lights. Mrs. Davis said the same thing, but a truck driver, Pierce, who drove south on Highway 11 shortly before the collision, said

that, although he saw no headlights, taillights were burning on the stalled vehicle.

The train crew saw a man sitting on the south side of the steering wheel, with his right arm on the back of the seat, and his head slumped over with his face downward. The locomotive hit the automobile, and despite all emergency measures of stopping, the front of the train came to a stop about 2800 feet north of the crossing. The three crewmen said that, as soon as they saw the man in the car, the engineer started blowing his horn sharply and at frequent intervals, trying to wake him up, but Phillips never moved.

██ ██ One element of plaintiff's claim in a wrongful death action is that deceased was alive immediately before the accident occurred. On this issue the evidence is conflicting. Although there was considerable evidence to the effect that Phillips was already dead, the jury was justified in finding that he was not, and that the collision killed him. See Fayard v. Louisville & Nashville R.R., 48 So. 2d 133 (Miss. 1950); Southern Ry. v. Jett, 49 Ga. App. 638, 176 S.E. 700 (1934).

II.

The questions of speed, lookout, and control were submitted to the jury on erroneous instructions granted appellee. Moreover, even if the instructions had been correctly drawn, findings of negligence in these three respects would be against the overwhelming weight of the evidence on this record.

██ ██ The undisputed evidence is that the train was moving at a rate of 40-42 miles per hour at the time the headlights of the train flashed upon the stalled automobile occupied by Phillips. This was at a crossing of a rural, gravel county road. It was not within the boundaries of any municipality, and thus was not subject to the 30 mile per hour maximum. Miss. Code Ann. § 7782 (1956). There was no statutory violation. Appellee

offered no evidence to warrant a finding that the train's speed was excessive or unreasonable under the circumstances. Eastabutchie is an unincorporated community. There are four Eastabutchie road crossings. The north one, at which this accident happened, was about one-half mile above the one next on the south. There are some residences in the vicinity, but the record does not show where they are located, or how many there are. There is no indication that there is congestion of traffic at this crossing, or even that it is fairly heavily traveled. Two hundred feet to the west is U. S. Highway 11. From that highway east to this crossing the grade is not over six or eight feet high, not shown to be an excessively steep or dangerous incline. The road itself crossed the railroad at a curve, but this fact alone does not indicate that the crossing was unusually dangerous.

 In this posture of the case, plaintiff was granted an instruction that if the jury believed that at the time of the collision and immediately before it the engineer was operating the train "at an excessive and dangerous rate of speed, after taking into consideration all of the facts and circumstances as shown by the evidence in this case surrounding said engineer at said time and surrounding the crossing involved at said time," then the engineer was guilty of negligence, and if a proximate cause, the jury would find for plaintiff. This instruction was error, because there is no evidence indicating the train was going at a dangerous and excessive rate of speed. Further, the undisputed evidence is that the stop made by this heavy train in 2800 feet was the best that could have been made under the circumstances. Appellee offered no transportation experts or scientists to present any facts to contradict this. Moreover, in addition to there being no evidence on excessive speed, the instruction also erroneously failed to require the jury to find that this was an unusually dangerous crossing. And even if this qualification had

been made, there was no evidence to support such a finding. Nor was there any evidence to support the granting to plaintiff of the lookout and reasonable control instructions.

 ■ In the absence of legislation, no rate of speed of a railroad train approaching a crossing in the country is, of itself, negligent. Hancock v. Illinois Cent. R.R., 158 Miss. 668, 131 So. 83 (1930); see Payne v. Hamblin, 126 Miss. 756, 89 So. 620 (1921); 44 Am. Jur. *Railroads* § 511 (1942). As was said in *Hancock,* the purpose of railroads is the accomplishment of speedy transportation of passengers and freight, and to require them "generally so to reduce their speed at all grade crossings as to avoid collisions with persons who may, carelessly or accidentally, be upon the crossing when a train is approaching would defeat, to a great extent, the purpose of existence of railroads." Appellee relies upon St. Louis & S.F.R.R. v. Moore, 101 Miss. 768, 58 So. 471 (1912), and Nixon v. Illinois Cent. R.R., 103 Miss. 405, 60 So. 566 (1912). However, these cases have been distinguished and are not applicable here, since both involved the running of a train at night through an incorporated municipality in violation of a speed statute. That was held to be negligence. Yazoo & M.V.R.R. v. Frazier, 104 Miss. 372, 61 So. 547 (1913), and Payne v. Hamblin, *supra,* declined to apply these cases where the trains were in the country and their speed not regulated by statute. In *Payne* it was held that it was not ordinarily negligence per se to run at a speed of 45 miles per hour in the country at a place where it was not unlawful. In these and later cases of this type the Court has declined to apply any "range of headlights" rule. Annot., 29 A.L.R. 1045, 1051 (1924).

Two Mississippi cases have involved facts substantially similar to those of the present case. In New Orleans & N.E.R.R. v. Holsomback, 168 Miss. 493, 151 So. 720 (1934), a freight train crashed at night into the stalled

truck of plaintiff at a public crossing. It was running south at 50 miles per hour, and there was a curve between 117-260 yards to the north of the crossing. The outlet of the curve where the engineer could first see the car with his headlights was only 260 yards, and the train could not be stopped in less than 400 yards. It was held that there was no actionable negligence.

In Illinois Cent. R.R. v. Roberson, 186 Miss. 507, 191 So. 494 (1939), a passenger train running between 55-60 miles per hour at night in the country crashed into the plaintiff's truck stalled on the crossing. The engineer could not see the crossing or truck until the train was within 250 feet of it, because the crossing was located in a deep curve, and at night the rays of the headlight did not follow the curve. The Court held the Moore and Nixon cases were not controlling, and that ordinarily there are no restrictions on speed at country crossings. Following *Holsomback,* it was said the engineer was without negligence.

In New Orleans & N.E.R.R. v. Wheat, 160 So. 607 (Miss. 1935), it was again held that except at frequently used or crowded crossings, railroads are not required, outside of the areas controlled by statutory speed limits, to reduce their speed. See Annot., 154 A.L.R. 212 (1945) (speed of train at highway crossing as negligence); Annot., 70 A.L.R. 2d 9, 50, 100 (1960). In contrast, Alabama has a statute requiring a railroad to reduce its speed in curves before crossings. Code of Alabama, Tit. 48, § 170 (1958).

 █ The rule applicable to the facts of this case may be summarized as follows: In the absence of a statute, no rate of speed at crossings is negligence per se. However, speed in the operation of trains even at country crossings may be negligence at common law, where the conditions surrounding the crossing make it more than ordinarily hazardous or dangerous. Nevertheless, the fact that there is a curve in a track near a

crossing which obstructs the view of the crossing by the engineer of the train, so that it cannot be stopped after it rounds the curve at the rate of speed it is going, does not make the crossing an extraordinarily dangerous or hazardous one, even though the collision happens in the nighttime, nor does it make jury issues on the questions of whether the crossing was more than ordinarily hazardous or dangerous, or of negligent speed, lookout and control. The essential issue is, what is a reasonable rate of speed under the circumstances, and this depends upon the question as to whether the crossing is unusually dangerous and hazardous.

Duncan v. Chicago B. & Q. R.R., 149 S.W. 2d 920 (Mo. App. 1941), contains an excellent analysis of these rules as related to facts somewhat similar to the present ones.

■■ ■ The key to the application of the foregoing rule is whether the crossing is an unusually dangerous one. Where a railroad crossing has a peculiar or dangerous environment, reasonable care may require additional warnings and safeguards for those traversing such a crossing. Here there was no unusually steep or dangerous grade in the highway leading to the railroad. Illinois Cent. R.R. v. Williams, 242 Miss. 586, 135 So. 2d 831 (1961). There was no deep cut on both sides of the crossing which prohibited motorists from seeing or hearing trains. Donald v. Gulf M. & O. R.R., 71 So. 2d 776 (Miss. 1954). No evidence reflects any unusual congestion of traffic at this crossing. One test of whether a railroad crossing is unusually dangerous is the ability of the traveler to observe or hear the approach of a train from the direction in which it is coming. 74 C.J.S. *Railroads* § 711 (1951); 44 Am. Jur. *Railroads* § 507 (1942). The evidence in the instant case would not support a finding that the crossing was unusually dangerous, even if the instructions had submitted that issue to the jury.

In short, the evidence did not justify submitting to the jury the issues of speed, lookout and reasonable control of the train. Moreover, even if there had been evidence to support submission of these issues, the instructions granted appellee did not conform with the applicable rules of law stated above.

## III.

The Bell and Whistle Statute requires every railroad locomotive engine to ring its bell or blow its whistle or horn at a distance of at least 300 yards from the place where the railroad crosses over any public highway or municipal street. The bell shall be kept ringing continuously or the whistle or horn shall be kept blowing at repeated invervals until the crossing is passed. Miss. Code Ann. § 7777 (1956).

The accident occurred on February 22, 1962, and suit was filed on October 23. The original declaration made no charge concerning violation of this statute. Trial began December 4, 1963, over a year later, and during testimony of the second witness for plaintiff, L. C. Pierce, a truck driver, plaintiff sought to amend her declaration to charge a violation of the statute. The court allowed the amendment, and denied appellant's motion for a continuance. These issues will not arise again on a new trial.

The only witness for plaintiff on violation of this statute was Pierce, who was driving a truck south on Highway 11 that night, at a speed of 50 miles per hour. The train was running north, and to some extent parallel with and about 200 feet from part of Highway 11, although the record does not reflect the points and distances at which the highway and railroad tracks diverge. Pierce said that he saw taillights on the stalled car at the crossing to his left; that he heard the air brakes when the caboose of the train (1½-2 miles in length) was passing him; and that he did not hear the whistle

or bell, and he was in a position to hear them if they had blown or rung. On the other hand, members of the railroad's train crew and several apparently disinterested witnesses testified that they heard both the bell and whistle for the proper distance before the crossing.

The applicable rule is that testimony that a fact did not occur, given by a witness so situated that in the ordinary course of events he would have heard or seen the fact had it occurred, is sufficient to warrant a jury in finding that the fact did not occur. Louisville & N.R.R. v. Price, 243 Miss. 99, 137 So. 2d 787 (1962); New Orleans & N.E.R.R. v. Ready, 238 Miss. 199, 118 So. 2d 185 (1960); Columbus & G.R.R. v. Lee, 149 Miss. 543, 115 So. 782 (1928).

Hence the question is whether the testimony of Pierce, while riding in his truck at night at 50 miles per hour, going in the opposite direction to the train in question, and situated where he was, was testimony of a witness so situated that in the ordinary course of events he would have heard the whistle or bell if they had sounded. We have not found any cases under the statute in which the testimony of failure to comply was of this limited nature. However, we think it was sufficient to take the case to the jury on this issue, as against a requested peremptory instruction. See 74 C.J.S. *Railroads* § 736(b) (1951); 44 Am. Jur. *Railroads* § 399 (1942); Annots., 66 A.L.R. 816 (1930), 73 A.L.R. 106 (1931), 62 Am. St. Rep. 172 (1898). Since the case is being reversed and remanded for other errors, we do not now consider or decide whether a verdict based on this evidence under the Bell and Whistle Statute would be against the overwhelming weight of the evidence.

## IV.

The declaration alleged that the railroad had negligently maintained its crossing, by keeping only a narrow

strip for the traffic to use, requiring the public to proceed up a steep incline, and leaving a deep hole on the crossing. The first two items are not supported by the evidence. Plaintiff's instruction submitted to the jury whether the railroad company permitted holes and excavations to exist in the public crossing which created a hazard to the traveling public, and whether as a result Phillips' automobile became stalled in a hole. The railroad is required to keep its crossings of public roads "in good order." Miss. Code Ann. § 7779 (1956).

 ██ Testimony on this issue is not wholly satisfactory. It is ambiguous, particularly in view of the two photographs introduced in evidence indicating that the hole was to the south and immediately off of the crossing. However, other testimony for appellee indicated the hole may have been on the crossing but on the south edge of it. We think the evidence was sufficient to be submitted to the jury. Since the case is being reversed and remanded for other errors, we do not consider or decide whether a verdict based on this issue would be against the overwhelming weight of the evidence. See Annot., 91 A.L.R. 2d 10 (1963) (defective surface of railroad crossing); Alabama Great So. R.R. v. Martin, 205 Miss. 851, 39 So. 2d 501 (1949); Mississippi Cent. R.R. v. Alexander, 169 Miss. 620, 152 So. 653 (1934); Gulf & S.I.R.R. v. Simmons, 150 Miss. 506, 117 So. 345 (1928); Lee v. Gulf, Colo. & S.F. Ry., 157 S.W. 2d 424 (Tex. Civ. App. 1948).

Reversed and remanded.

*Lee, C. J., and Rodgers, Jones and Patterson, JJ.,* concur.