NEW ORLEANS & N. E. R. Co. *v.* KELLER.

(Division A.   Dec. 14, 1931.)

[138 So. 358.   No. 29234.]

**Stevens & Heidelberg**, of Hattiesburg, for appellant.

**Hall & Hall,** of Columbia, for appellee.

Hall & Hall, of Columbia, and Currie & Currie, of Hattiesburg, for appellee.

McGowen, J., delivered the opinion of the court.

Appellee's intestate was struck and instantly killed by a rapidly moving passenger train of the appellant at a private crossing on January 23, 1928. The appellee sought to prove that the crossing in question was a public crossing, but the court below gave a peremptory instruction that the crossing in question was a private one.

Taking the evidence more strongly for the appellee, it was shown that the crossing was maintained by the railroad, and that many years ago people were wont to use the road in going to and from the Lee neighborhood to the Hattiesburg highway west of appellant's railroad track and right of way; and that many years ago there was a church on the west side to which people were accustomed to go; and at one time a schoolhouse.

There was travel over this crossing, desultory in its nature, for the last ten years. Various witnesses testified to seeing people use the road and crossing. On the west side of the railroad there was a gravel pit. The railroad right of way extended one hundred feet from the track on either side. Adjacent and adjoining the railroad right of way was the state highway sixty feet in width, and further west was the plant of the gravel pit which employed a number of men, and it was shown that perhaps as many as six people used the crossing in a day in connection with their work at the gravel pit. Several hundred feet north of the crossing there extended in a southwesterly direction a spur track from the railroad to the gravel pit, which was used occasionally only by the railroad employees. At the point where the injury occurred, there was no depot nor flag stop; the engineer testifying that he had been running on that railroad for forty years over the place in question and had never seen any person crossing there.

McInnis, the deceased, lived in a house to the east of the right of way and had lived there for about two months, and was sometimes engaged in hauling gravel with his own truck for the gravel pit company and at other times working for them at twenty cents per hour. In going to and from his house to the gravel pit he used this road.

On the occasion in question, the train was going south on time, running on a fixed schedule, a fast passenger train, and usually passed this point at about the same time. There was a flag stop about one-half mile south of this crossing, and on this date the operators of the train had orders to meet a fast train proceeding north at Dragon, the flag stop. Standing on this crossing looking north, a train could be seen for a distance of at least four miles; the one hundred foot right of way on either side of the track had nothing thereon to obstruct the view. It was slightly down grade, and there were

no houses, trees, limbs, or growth of any kind to obstruct the vision. The right of way was fenced on the east and on the west and had a gate on the east and on the west sides across this road.

On the day of this accident, appellee's intestate entered from the east side to travel across the right of way and track of the railroad company and proceeded west at right angles with the railroad thirty-two feet, thence southwest ninety-eight feet to a point fourteen feet from the track, thence due west fourteen feet to the railroad track. The only eye witness for the appellee, Lee, testified that when he crossed the track going east along this road he saw the south-bound train coming, and, when he reached the gate, he met McInnis driving in, and that at that time he saw the train moving rapidly coming south, saw the fireman on the east side looking out from the engine, and the train was about one-fourth mile from the crossing, and that McInnis proceeded, and not until he got within about eight or ten feet of the railroad track did he, the witness, realize that the decedent would undertake to pass over the track in front of the on-coming train; that when McInnis was at a distance of eight feet the train was within one hundred and fifty feet of the crossing; that without stopping, looking, or apparently paying any attention McInnis drove on the track. He said no warning was given by the blowing of the whistle or ringing of the bell or otherwise. He is strongly contradicted in this statement; in fact there is evidence to the effect that the witness was not present on that occasion.

The fireman testified in substance the same as Lee, except he testified that a signal was given by the engineer of their approach to Dragon, a meeting point with another train. The fireman says that he saw McInnis when he entered the right of way on the east side; that he was proceeding about ten miles per hour, and when within about fourteen feet of the track he stopped, and

suddenly went on again, and when he (the fireman) saw from that point that McInnis was proceeding to go across the track he promptly notified the engineer who immediately put on the emergency brake and stopped the train.

It is undisputed in this evidence that the engineer, being on the west side and his engine extending down the track thirty-five or more feet in front of him, could not see the east gate of the right of way within less than one-half mile of the crossing, and that when he was within two hundred feet of the crossing he could not see the east rail. He stated that he was on the lookout looking straight down the track, and when within one hundred and fifty or two hundred feet of the crossing, being notified by the fireman "man on the track," he immediately put on the emergency brake and stopped within six car lengths. He, as did others, testified that he gave sharp signals by blowing the whistle, being signaled so to do by the conductor for the meeting point at Dragon one-half mile from the crossing. His train was running thirty-five miles an hour, and its schedule was thirty-eight miles per hour without stops.

The court peremptorily instructed the jury that the railroad was not required to give the statutory signals; that the crossing was not a public crossing; that there was no negligence in the operation of the train as to speed, and submitted the case to the jury upon the theory that there was an issue of fact as to the common-law liability of the servants of the railroad company in not giving a warning for this particular crossing, under the circumstances.

The appellee recovered a substantial judgment in the court below. The appellant requested a peremptory instruction as to all the counts of the declaration, which which was refused by the court. On the facts as detailed, there is no question but that appellee's intestate was guilty of gross negligence. The evidence shows that

the railroad fireman and engineer sought to stop the train by every means at their command when it became evident that McInnis would undertake to cross ahead of the oncoming train. Is there any evidence upon which to base common-law liability in this case? After a careful and protracted study of this record we must say that no negligence is shown on the part of either the fireman or the engineer. In fact, no sort of negligence can be attributed to the engineer, unless it be said that the fireman was negligent, and his negligence may be imputed to the engineer. Yet the verdict and judgment were against both the engineer and the railroad company.

The suit in this case was filed jointly against the engineer and the railroad company on all counts. The appellee alleged that the negligence of the engineer was the negligence of the railroad company. On this statement of facts, was there any negligence under the rule of law applicable to this case attributable to the fireman, if it be conceded that his negligence may be imputed to the engineer, which we do not here have to decide? The principle applicable has been quoted with approval from 22 R. C. L. 1004, but "a railroad is bound to exercise reasonable care in the operation of its trains and to avoid injury to persons and animals at all crossings, private as well as public; and if by reason of peculiar or extraordinary circumstances surrounding a crossing and known to the trainmen ordinary prudence would require an alarm or signal to be given by an approaching train, then its omission is negligence." The above language was adopted with approval in the case of I. C. R. R. Co. v. Mann, 141 Miss. 778, 106 So. 7, 8.

In Y. & M. V. R. R. Co. v. Lucken, 137 Miss. 572, 102 So. 393, 396, the rule is thus stated: "But in the case of a private crossing which people habitually travel, the duty of a railroad company to give signals would depend upon the circumstances existing at a particular time."

This record does not disclose any peculiar or extra-

ordinary circumstances surrounding this crossing and known to the trainmen that would differentiate it from any other private crossing, whether farm crossing or neighborhood road, in the state. The travel over the road was sporadic; there was no stream of travel at any given time known to the railroad or anybody else; there was no necessity for anybody to be along the track; and there was no cut or fill by which one seeking to cross at this point would be trapped and unable to see an on-coming train, such as were the circumstances in the Mann case, supra, and likewise in the case of C. & G. Ry. Co. v. Duease, 142 Miss. 713, 108 So. 151, and I. C. R. R. Co. v. Dillon et al., 111 Miss. 520, 71 So. 809.

In the Mann case, supra, there was a cut or fill, on account of which one going on the track could not see the train until he was upon the track. In the Dillon case, it was shown that the crossing was used by one hundred and fifty or two hundred employees at that time and place, and this was known to the trainmen, and that there was a coal chute and houses obstructing the view of pedestrians crossing at this place. And in the Duease case, it was shown that there were obstructions on the right of way.

When it become evident to the fireman that the decedent was going into a place of peril, he immediately gave warning to the engineer, and the record shows that it was impossible for the railroad employees to have avoided the collision with the truck driven by the decedent. But counsel for the appellee argue that because of the proximity of the gravel pit to the railroad right of way there arises a question for the jury to say whether or not there were peculiar or extraordinary circumstances. To this we cannot agree. To say that six or seven people might in the course of a day pass on a country road across the railroad at this point, and therefore require the railroad to give warning, would be to establish a more rigid rule than is contemplated by the

language of this court which we have quoted. If we should affirm this case, it would be tantamount to holding that a railroad company must give warning by signal of its approach at every private, as well as public, crossing.

It is undisputed in this record that, when it became apparent that appellee's intestate would disregard his own safety entirely, it was too late for the servants of the company to do anything but stop the train as promptly as possible, which the record shows they did. All the facts of this occurrence have been shown. There was no defect in the train, engine, or appliances, no neglect on the part of the engineer, nor on the part of the fireman; but the appellee's intestate drove on the track in front of a rapidly moving train which was due at the time he was crossing according to its schedule, and of this appellee's intestate was aware or should have known.

As was said in the case of Alabama & V. R. R. Co. v. McCoy, 105 Miss. 737, 63 So. 221, it was not within the power of the servants of the railroad in charge of the train to have prevented the accident after he got on the track; and in the case at bar we will say it was not within their power to stop the train or do anything else that would have prevented this accident after it became evident to them that McInnis was going upon the track. It certainly cannot be insisted that the railroad must give a separate warning signal to every person whom it sees upon its railroad right of way, and warning in such a case as this is not necessary until it becomes evident that a party approaching the track will ignore and disregard entirely his own safety.

The peremptory instruction should have been given in this case for the defendant.

Reversed, and judgment here for the appellant.