New Orleans & Northeastern Railroad Co. *v.* Burney

No. 42793 December 16, 1963 159 So. 2d 85

*M. M. Roberts*, Hattiesburg, for appellant.

*William E. Andrews, Jr.*, Purvis; *Stone D. Barefield*, Hattiesburg, for appellee.

Brady, Tom P., J.

This is an appeal from the Circuit Court of Lamar County, Mississippi, in which the appellee, George Burney, was awarded a judgment of $4,500 on account of personal injuries he received on December 5, 1962, when he was traveling in a westerly direction in the Town of Purvis in said County and was struck by the engine of a southbound freight train of the appellant railroad when he endeavored to pass from the east side of said railroad tracks over State Highway 589, which is a part of Ohio Avenue within the corporate limits of the Town of Purvis, and he sustained serious and permanent injuries. From this judgment appellant prosecutes this appeal.

In his declaration appellee set us six grounds of negligence, which were: (1) The failure of defendant, hereinafter called appellant, to give the statutory signals and warnings; (2) the failure to exercise reasonable care to stop the locomotive so there would not have been a collision; (3) the speed of the train was in excess of thirty miles per hour in violation of Sec. 7782, Miss. Code of 1942; (4) appellant failed to erect interlocking or other safety devices or barricades when operating its train at a speed in excess of thirty miles

per hour without stopping; (5) in failing to remove an obstruction of an embankment on the railroad right-of-way which obstructed the view of traffic and prevented appellee from seeing the locomotive when traveling south on the east side of the Town of Purvis and on appellant's right-of-way; and (6) in traveling and colliding with appellee at an excessive and unlawful rate of speed in the said Town of Purvis crossing.

Appellant denied each and every allegation of the declaration of appellee, which, in substance, was that State Highway 589, or Ohio Avenue in the Town of Purvis, was not a heavily traveled crossing where it goes over appellant's railroad tracks; that one traveling from the east toward the west on Ohio Avenue or State Highway 589 has the view unobstructed by an embankment, and denied that there is an embankment obstructing the visibility of the public and of the appellee on the occasion complained of.

Appellant admitted the requirements of Sec. 7777, Miss. Code of 1942, but denied that it had failed to comply with all the terms of said section, and that it was guilty of any negligence which caused or contributed to the accident, in that it did have a bell of at least thirty pounds weight, it did have a horn or whistle which could be heard distinctly at a distance of 300 yards, and that the whistle was blown and the bell was rung continuously as required by said section.

Appellant further denied that it was the duty and obligation of appellant to remove an alleged obstruction by way of an embankment on the easterly side of said railroad tracks and north of the street on which appellee was traveling.

After denying all the material allegations of the appellee's declaration, then by way of affirmative defense, the appellant charged that it did all which could possibly have been required of it and was free from any negligence, and, further, that the failure of ap-

pellee to stop, look and listen for the moving train, his failure to heed the warning of the electric blinking lights which had been put at the crossing by appellant, the failure of appellee to comply with the Mississippi Law stop sign requirement were the sole and proximate causes of the injuries sustained by appellee on account of the collision with appellant's diesel engine.

There was no motion for a new trial filed in this case after the verdict of the jury and the judgment in the sum of $4,500 was entered. But appellant did file a motion requesting the court to set aside the jury verdict and judgment and to enter judgment for appellant, notwithstanding the verdict of the jury, because under the law and facts appellant was entitled to judgment against appellee and the appellee is entitled to recover nothing from appellant. This motion was overruled. Thereupon the appellant perfected this appeal.

Appellant assigns but one error in this cause, which is: "The appellant was entitled to a judgment as a matter of law, there being no believable evidence to support a verdict and judgment."

It is to be noticed that this case is unique and differs somewhat from the usual appealed case in that there are no objections to any instructions granted appellee. There is no charge that the verdict is against the great overwhelming weight of the testimony, though the assignment of error implies this, or that the verdict of the jury was influenced by bias and prejudice; that there is no contention that a motion for a new trial should have been granted appellant on account of testimony or evidence which was improperly admitted over objection of appellant. In short, the appellant's contention is simply that the evidence offered by appellee is insufficient to support a verdict and judgment showing that appellant was guilty of any negligence as set forth in the declaration of appellee which would entitle appellee to a judgment against appellant. This assign-

ment of error, therefore, requires the Court to review carefully and to determine whether or not the testimony offered by appellee is sufficient to establish that degree of negligence on the part of appellant which would justify submission of factual issues to the jury and the verdict and judgment obtained by appellee in the court below.

The testimony of all witnesses for the appellee, therefore, must be reviewed insofar as it bears upon the questions of negligence presented under the pleadings. Testimony in this case does disclose that there are some undisputed facts, as follows: State Highway 589, also known as Ohio Avenue, crosses appellant's tracks in the center of the Town of Purvis, Mississippi; said railroad tracks and right-of-way divide the business district of the Town of Purvis into two parts, one lying east of the railroad and the other to the west; said Ohio Avenue runs generally east and west. Appellee was driving his automobile on the morning of December 5, 1962, at approximately 8:10 A.M., in a westerly direction, going slightly down grade as he approached the tracks of appellant, which tracks run approximately north and south. It is undisputed that there is a Mississippi Law Stop Sign situated on the right-of-way 58 feet to the east of the main line tracks of appellant. There are three tracks of appellant situated in the crossing, one being the main line, a by-pass track, and a switching track. The depot is south of the street crossing and west of the main line track. It is undisputed that there was an automatic electric bell-light signal which was making its usual ringing sound and flashing the red blinking lights. It is undisputed that the locomotive of the appellant was equipped with a bell of at least 30 pounds weight and a whistle or horn which could be heard at least 300 yards. It is undisputed that the car which appellee was driving was struck on the right rear side just behind the right rear door and

was carried toward the south by the impact with the locomotive of the appellant; that appellee sustained the injuries complained of in the declaration. There is no dispute as to his hospital bills in the sum of $548.25 for injuries to his body, or the bill for $247.00 for medical attention given to his teeth, or as to his nursing bill, his indebtedness to the Blood Bank of the Hattiesburg Clinical Society, his indebtedness to Dr. Fred V. Hill and Dr. E. G. Duck, or that his injuries are serious and permanent. There is no contest of the allegations of appellant that the locomotive was properly equipped in compliance with statutory regulations.

By mutual agreement, both appellee and appellant introduced photographs illustrative of the place where the accident occurred and to establish their contentions with reference to the dangers of the situation there. Appellee introduced five photographs, found on pages 19A through 19E of the record. Number 5 on page 19E is a picture of the car of appellee and was taken from the front of the car as it was situated on the right-of-way of appellant at the crossing. Number 4 on 19D shows the motor of the appellee's automobile as it rested on appellant's right-of-way. Number 3 on page 19C shows the right side of the automobile and apparently the point of impact, towit, just behind the right door. This is a two-door Chevrolet Corvair, 1962 model. Number 2 on page 19B shows a close-up of 19C. Number 1 on page 19A shows a portion of the main line of appellant railroad, the camera apparently facing southeast, and Ohio Avenue on which appellee was traveling just before he was struck. The section of railroad track disclosed by this photograph is apparently that portion just immediately north of the crossing of Ohio Avenue with the tracks of appellant.

By agreement appellant introduced 7 photographs, numbers 20A through 20G. Numbers 20A and 20B show two tracks, the main line and the by-pass, and a section

of the track north of the Ohio Avenue crossing. The exact distance the camera was from the west rail of the by-pass track is not reflected but it appears that it was on the north edge of Ohio Avenue looking northwest. It shows the visibility to the north from the east approach of Ohio Avenue before crossing the tracks of appellant. Apparently these pictures were taken some distance between 10 and 58 feet from the railroad east tracks, the east track being the main line on which appellant's train was running on the occasion.

Number 20C, looking more toward the west, reveals the railroad crossing, the automatic flashing signal and alarm. Number 20D shows about the same as 20C except it shows more of the Ohio Avenue crossing and was taken from approximately the center of Ohio Avenue looking toward the west. Number 20E is a photograph of the tracks looking from north to the south, and reveals the depot on the right or west side of the two tracks and the crossing over which appellee rode just before being struck by appellant's train. This picture discloses the Mississippi Law Stop Sign to the east some 58 feet from the crossing, and likewise the flashing warning light and bell signal situated some 10 feet from the east rail of the main line. It also shows the condition of the right of way and the alleged bank which appellee claims blocked his vision. The truck shown in this picture is parked close to and under the stop sign, which is facing east and west. Number 20F is a close-up view of the crossing, showing the incline, the condition of the crossing, and the presence of a locomotive as it is about to cross from the north side of said intersection to the south side. Number 20G was taken with the camera facing to the west and slightly south of the telephone pole shown in Number 20B, and it shows how a locomotive of the appellant appeared at the point it was on the railroad track. The locomotive engine appears to be across from the signal or radio tower shown

in appellant's picture 20C. The locomotive was north of the crossing and headed south.

In his brief in support of the assignment of error committed in the court below, namely, that the appellant was entitled to a judgment as a matter of law, there being no believable evidence to support a verdict and judgment, appellant urges two principal reasons, towit: (A) The overwelming weight of the testimony requires the conclusion that the motion for a directed verdict should have been sustained and the written requested peremptory instruction should have been given; and (B) the court erred in overruling the motion of appellant to set aside the jury verdict and enter judgment for appellant because under the law and facts of this case the appellant is clearly entitled to judgment.

Before considering the merit of the contention embodied in proposition (A) hereinabove stated, we feel that it is advisable to again show the distinction between the duty of the trial judge in respect to a peremptory instruction as compared with his duty to set aside a verdict because it is against the overwhelming weight of the evidence and to grant a new trial. We do so fully cognizant that appellant here did not and does not seek a new trial, but, in lieu thereof, asks that the verdict be set aside "because under the law and facts of this case the defendant is clearly entitled to a judgment." It is easy to confuse these two vastly different duties. In Mobile & Ohio R.R. Co. v. Johnson, 165 Miss. 397, 141 So. 581, the distinction between these duties is succintly shown. Insofar as granting the peremptory instruction is concerned, the rule is that, laying aside and leaving out of view the testimony in behalf of defendant, if the evidence in behalf of the plaintiff is sufficient in law to establish the legal right of the plaintiff in issue and is not inconsistent with the admitted physical facts or with natural laws or common knowledge, and, so viewed, the plaintiff's testimony

taken alone is such that reasonable men, acting reasonably, could reasonably believe that testimony and prudently act upon it, then a peremptory instruction for the defendant must not be given. C. & G. Railway Co. v. Buford, 150 Miss. 832, 116 So. 817. ██ █ However, when all the testimony has been heard and all the arguments delivered and the verdict returned, if, upon a completed view of the entire case, the trial judge is then of the opinion that the verdict is against the overwhelming weight or clearly against the great preponderance of the evidence, his duty is, upon a motion for a new trial, to set aside the verdict and grant a new trial.

██ █ Appellant's motion made at the conclusion of appellee's testimony sets forth no reason in support thereof but correctly asks "the court to exclude the testimony and direct the jury to find for the defendant." However, in support of that motion, appellant now urges that the overwhelming weight of the testimony requires the conclusion that the directed verdict should have been sustained. We cannot agree with this reason for decision. The question is not determined by the weight of the evidence but by the simple test of whether the evidence presented by appellee is sufficient in law to establish the legal right of the plaintiff in issue, as hereinabove set forth. We shall address our remarks to this proposition. In other words, was the appellee's testimony sufficient to submit to the jury the question of negligence on the part of appellant which caused or contributed to appellee's injuries?

Under appellant's ground (A) it is urged (1) that all of the warning devices designed for public safety as required by law were present and fully operating at the crossing at the time of the accident, and (2) appellant's trainmen performed their full duties imposed by law with respect to ringing the bell or blowing the whistle of the locomotive in accordance with the pro-

visions of Sec. 7777, Miss. Code of 1942; (3) that appellant's trainmen kept the proper lookout and did everything possible to avoid the collision after discovering appellee's position of peril; (4) that an embankment east of appellant's tracks and north of the crossing and a curve in the tracks 200 to 300 yards north of said crossing did not constitute hazardous or material obstructions to visibility either to motorists approaching the crossing on Ohio Avenue from the east or to trainmen approaching the crossing from the north; (5) that appellant's train was not traveling at an excessive or negligent rate of speed as it passed through the Town of Purvis at the time of the accident.

Before analyzing the five grounds urged by appellant in support of its primary contention that the overwhelming weight of the testimony requires the conclusion that a directed verdict and the peremptory instruction asked by appellant should have been granted, it is to be noted that appellee advises in his brief that he will respond only to the third, fourth and fifth grounds for the stated reason that "if the appellant failed to keep a proper lookout, or if the existing embankment east of appellant's track and a curve in the appellant's track constituted a hazard for material obstruction, or if appellant's train was traveling at an excessive or unreasonable rate of speed on the day in question in relation to the circumstances and physical conditions there existing, then it would follow that the appellant was still negligent, notwithstanding the fact that it may have placed all warning signs required by law and performed their duty by ringing their bell or blowing the whistle of the locomotive." Grounds one and two should nevertheless be carefully considered in reaching a conclusion herein.

 █ Insofar as the existence of all the warning devices for public safety as required by statute is concerned, the testimony of appellant is uncontradicted that

all devices so required were at hand and were properly operating at the time of the accident. Insofar as the statutory obligation of the trainmen of ringing the bell or blowing the whistle the requisite distance is concerned, it is to be noted that the record fails to disclose that neither the appellee nor any of his witnesses positively testified that the bell was not ringing or the whistle was not blowing. All that the appellee and the four witnesses who testified negatively regarding the signals was that they did not hear the bell or whistle. In contrast to these negative observations are the positive statements of the engineer, the fireman, the station agent, and appellee's witness, Paul Jones, all of whom said the bell was ringing and the whistle was blowing continuously. Furthermore, appellee's witnesses, Gordon Miller and Cecil Taylor, likewise testified that they heard the whistle blowing when the train was approximately 1000 yards, or 100 yards respectively, north of the crossing, thereby corroborating the testimony of the engineer and the fireman. We feel, therefore, that the overwhelming weight of the testimony establishes the fact that the appellant's trainmen did give the statutory warning signals as required by Sec. 7777 of the Miss. Code of 1942, and the appellant is not guilty of any negligence relative thereto.

Next considering point three of appellant, which is the first point contested in appellee's brief, namely, that appellant's trainmen kept the proper lookout and did everything possible to avoid the collision after discovering appellee's position of peril, we find these facts undisputed: That the engineer-fireman was in the engine on the left side and was looking down the tracks and to his left as the train approached the crossing; that he saw appellee's car approaching the crossing along Ohio Avenue for some distance before appellee reached the Mississippi Law Stop Sign, and, in fact, kept more of a lookout than he was required to keep since he did

not have to keep a lookout beyond the right-of-way. M. & O. R.R. Co. v. Johnson, 165 Miss. 397, 141 So. 581. Furthermore, it is undisputed that as soon as the engineer-fireman saw appellee was not going to stop he immediately signalled Williams, the fireman-engineer who was at his post of duty, and who immediately applied the emergency brakes; that in a lapse of two seconds after it was seen or realized appellee was not going to stop the emergency brakes were applied; that the brakes were operating properly and were kept on until the train stopped; that everything that could have been done was done to stop the train.

This undisputed testimony also establishes the fact that the doctrine of last clear chance has no application here, after appellee's perilous position was discovered. Brookhaven Lumber & Mfg. Co. v. I.C.R.R. Co., 68 Miss. 432, 10 So. 827, M. & O. R.R. Co. v. Bryant, 159 Miss. 528, 132 So. 539; N. O. & N. E. R.R. Co. v. Keller, 162 Miss. 392, 138 So. 358; Vann v. Tankersly, 164 Miss. 748, 145 So. 642; M. & O. R.R. Co. v. Johnson, 165 Miss. 397, 141 So. 581; I.C.R.R. Co. v. Underwood, 235 F. 2d 868; Brown v. L. & N. R.R. Co., 234 F. 2d 204. ▮▮ The inability of the fireman-engineer to locate, when under sharp cross-examination, the Mississippi Law Stop Sign in defendant's exhibit 20E, does not prove, as appellee urges, that he was not keeping a lookout. The preponderance of the credible testimony establishes the fact that the appellant kept the proper lookout and did everything possible to avoid the collision after discovering appellee's position of peril.

Regarding point four, which is that the existing embankment and curve in appellant's track did not constitute hazardous or material obstructions to motorists approaching the crossing from the east or to the trainmen approaching the crossing from the north, it is to be noted that appellee points out that it is much easier for the trainmen who were elevated well above the

level of the intersection to see an approaching vehicle than it would be for a person traveling west in an automobile and approaching said intersection to see an approaching locomotive from the north because of the large embankment to the north of the crossing and east of the tracks. Appellee urges that Exhibit E of appellant shows the northernmost portion of the embankment located to the east of the railroad tracks and claims that the back portion of the truck in said picture is clearly shown to be obstructed from view by the embankment and weeds located on the right-of-way.

In passing, the appellee, whose pictures were taken shortly after the collision and before his car had been removed from the right-of-way, did not introduce any photograph purporting to disclose the presence and position of the alleged embankment, and the obstruction to the vision of appellee on account thereof, on the east side of the railroad tracks and north of the Ohio Street crossing on which appellee was traveling. Appellee, however, seeks by the appellant's pictures to establish these facts. A close examination of appellant's Exhibit E fails to show that the northernmost part of the embankment and weeds obstruct from view the back portion of the truck in said picture. The frame of said truck is visible and the right rear wheel can be seen. The portion of the embankment shown is the southernmost and not the northernmost portion as claimed by appellee.

The pictures of appellant throw considerable light on the conditions at the crossing, and negatives some of the testimony offered by some of appellee's witnesses in this case. Did the embankment, and the curve in appellant's tracks some 200 to 300 yards north of the crossing, constitute hazardous or material obstructions to visibility either to motorists approaching the crossing from the east or to appellant's trainmen from the north? The testimony is in conflict. The testimony of the train-

men is undisputed that the embankment to the east did not interfere with their visibility or prevent them from seeing the crossing, or the appellee as he approached the crossing from the east, as the train on which they were riding approached from the north. Appellee must rely upon the testimony of his witnesses Morris, Bond, Beach, Barrett, Simmons and Taylor — Beach and Barrett being eye witnesses. Although Morris testified you could see only fifty or seventy-five feet north from the Mississippi Law Stop sign, still from the second sign — Railroad Crossing, Stop on Red Signal — he said one could see three hundred yards up the tracks to the old cattle pen. It was this witness who said the track was straight and in 200 or 300 yards it starts making a curve. He alone established where the curve began. Bond and Beach both testified you had to be at the track in order to see any distance to the north, but Beach said within a few feet of the track you could see 150 to 200 yards. Taylor testified the train was 100 yards away when it got to where he could see it from where he was, which was about one hundred and fifty feet from the track. Simmons testified that nothing but the bank could be seen when standing by the Mississippi Law Stop sign, some 58 feet from the tracks. He alone located the embankment on the appellant's right of way.

The opinion testimony of these witnesses is contradicted by the appellant's photographic exhibits B, C, D and E. The pictured facts relating to the embankment, crossing, warning signs, and condition of the railroad crossing and Ohio Avenue are not based upon estimates or memory. These exhibits are completely objective, in spite of appellee's witness Morris' criticism to appellant's exhibits A and B.

These pictures are a true, pictorial representation of the conditions actually existing at the crossing at the time of the accident, and because thereof appellant

urges that the rule of preference applies. This rule is fully set forth in Russell v. Miss. Central R.R. Co., 239 Miss. 741, 125 So. 2d 283; S. H. Kress Co. v. Sharp, 156 Miss. 693, 126 So. 650, 68 A.L.R. 167; Hardaway Contracting Co. v. Rivers, 181 Miss. 727, 180 So. 800; I.C. R.R. Co. v. Underwood, 235 F. 2d 868.

 ██ Appellant earnestly contends that the aforesaid well established rule of preference, which relates to actual measurements, distances, size, weights and similar items which can be mechanically, mathematically or scientifically proven to be accurate, is clearly demonstrated by the photographs and operates here. We concur and follow in the case at bar, insofar as the embankment's obstruction of the appellee's vision is concerned, the rule as laid down in Russell v. Miss. Central R.R. Co., supra, and hold that appellee's vision, as shown by the photographs, was not obscured by the embankment and weeds so that upon approaching the crossing from the east, or upon entering the right-of-way, appellee could see for considerable distance to the north up the appellant's track and could see an approaching train thereon. Irrespective of the testimony of appellee's witness that one had to be almost upon the tracks before you could see any distance to the north because of the embankment and weeds thereon, photographic exhibit 20E clearly and conclusively shows that a person standing in the middle of the railroad tracks can clearly see the truck parked below the Mississippi Law Stop sign apparently 150 to 200 feet away. The embankment and weeds are to the east and out of the line of vision. If a person standing 150 to 200 feet away from the Mississippi Law Stop sign can see, when looking southward, the post bearing that sign and the truck parked thereunder, it stands to reason that a person sitting in the truck can see to the north a person or train 150 to 200 feet away.

Photograph 20B, moreover, shows that a person standing a few feet to the left and behind the Mississippi Law Stop sign can see a considerable distance further to the north up the railroad tracks. The exact distance was not measured, but only estimated. The photographs show it is a physical impossibility for the embankment to have prevented the appellee from seeing an undetermined distance to the north up the railroad tracks when he was beside the Mississippi Law Stop sign.

If photograph 20E had been taken with the camera further north up the tracks, it could have easily shown how much further away the truck could have been seen and vice versa how far the train could have been seen, as revealed in photograph 20B. As heretofore stated, apparently the camera in taking Exhibit 20B was situated where the truck is shown to be in Exhibit 20E.

While the visibility at the crossing is disputed as to its distance the photographs clearly show that the railroad tracks on the right-of-way are plainly visible a far greater distance than is testified to by the witness for appellee. It more closely approximates 100 yards or more, as shown by testimony of witnesses, than it does fifty or 75 feet to 75 yards. S. H. Kress & Co. v. Sharp, supra; Hardaway Contracting Co. v. Rivers, supra; M. & O. R.R. Co. v. Bryant, supra; I.C. R.R. Co. v. Underwood, supra; 32 C.J.S., Evidence, Sec. 492.

█ █ There is but little testimony regarding the curve in appellant's track and its location with reference to the crossing except that two or three hundred yards north of the crossing the track starts making a curve to the east. While the location, height of the embankment, and the curve in the track are matters to be taken into consideration in determining the existing conditions at the time of the collision, we feel that the overwhelming weight of the testimony and evidence shows that the embankment was not an obstacle to visibility when the appellee reached a position beside the Mississippi Law

Stop sign. It can be conceded that before reaching said sign his vision was obscured by the embankment, the height of which was estimated by the witnesses to be between four and twelve feet.

Insofar as the speed of the train constituting negligence because of its excessive rate is concerned, we do not agree with appellee that Sec. 7782, Miss. Code of 1942, controls. This section was written before there were any diesel electric trains in Mississippi and applied expressly to trains operated by the dangerous agency of steam. The prohibitions in this section relate only to steam powered trains, and the care which the trainmen were required to exercise in the case at bar was that ordinary care imposed by common law duty. The trainmen were under no duty greater than the common law duty to exercise ordinary care under the circumstances and conditions. Calvert v. M. & O. R.R. Co., 153 Miss. 866, 121 So. 855; Stapleton v. L. & N. R.R. Co., 265 F. 2d 738.

As to the actual speed of the train, all the testimony appellant urges is an estimate except that of the fireman-engineer, who stated that he actually looked at the speedometer, saw and fixed the speed at 45 miles per hour, which was corroborated by the engineer-fireman and the depot agent Daley who estimated the speed at 45 to 50 miles per hour. Russell v. Miss. Central R.R. Co., supra; S. H. Kress & Co. v. Sharp, supra.

Insofar as the crossing condition is concerned, there is only the embankment and curve of the track to the east, in this record, which shows this crossing to be peculiar, unusual or extraordinary, and this was known or should have been known to the trainmen. The testimony and exhibits disclose that there is nothing unique about this crossing to distinguish it from the usual crossing in any other small municipality. There are no standing boxcars, loading platforms or sheds present; there are no trees, shrubs or signs, nor did the depot obscure

the vision or hinder the effectiveness of the warning signals. All appropriate warning signals and signs were present and operating. These were the conditions favorable for the appellant.

However, these additional conditions are also shown to be present at the crossing: First, it is in the center of the Town of Purvis; the crossing is one considerably used by the local inhabitants; it is not exactly level when approached from the east, there being a slight downgrade; it appears to be a right angle crossing; there is an embankment clearly shown in appellant's exhibits B and E which is covered by weeds that obscures the view of one approaching from the east until the Mississippi Law Stop sign is reached; there is a curve in the track which is to the east looking north which together with the embankment on the right-of-way prevents an approaching train from being seen by one entering the crossing from the east until he has gotten upon the right-of-way beside the Mississippi Law Stop sign, and the train has come out of the curve.

It is apparent, therefore, that under these conditions we are now faced with the last remaining basic question of whether under the circumstances and conditions existing at the crossing at the time of the collision the appellant violated the duty imposed upon it by common law to exercise ordinary care in the operation of its train. To be specific, did the appellant under the existing circumstances operate its train at a speed which violated appellant's common law duty of exercising ordinary care? In other words, was the jury justified in finding that the speed of the train under the existing circumstances was a material contributing factor in the cause of the accident?

Appellant cites as controlling authority on this question Russell v. Miss. Central R.R. Co., supra, and S. H. Kress Co. v. Sharp, supra, and urges that the rule of preference should apply insofar as the speed

of the train is concerned, and that since the fireman-engineer looked at the speedometer and it registered 45 miles per hour, that this rate of speed should be accepted in preference to the other speeds as the actual speed of the train because he alone did not rely upon causal observation, or base the speed upon an opinion or estimate, but actually read the speedometer's indicated rate of speed. We are not constrained to extend the rule of preference so as to conclusively find that the testimony of the fireman-engineer actually fixed the speed of the train at exactly 45 miles per hour.

The reasons are obvious. There is no proof that the speedometer was accurate, had been checked, and found to be so; and, furthermore, though the engineer could firmly believe that he truthfully recited the speed he could have been mistaken. The testimony of the engineer should not be considered, therefore, in a preferential light, but reviewed by the jury together with all the other witnesses' testimony as to speed. It is not entitled to be considered preferentially accurate as are facts which are demonstrated in a photograph.

The appellant, in support of its contention that the speed of the train was not a contributing factor in the accident and, therefore, did not constitute negligence on appellant's part, cites other additional authorities, towit: Hancock v. I.C.R.R. Co., 158 Miss. 668, 131 So. 83; N. O. & N. E. R.R. Co. v. Wheat, 172 Miss. 524, 160 So. 607; I.C. R.R. Co. v. Roberson, 186 Miss. 507, 191 So. 494; Flynn v. Kurn, et al., 183 Miss. 413, 132 So. 339; N. O. & N. E. R.R. Co. v. Holsomback, 168 Miss. 493, 151 So. 720. See also M. & O. R.R. Co. v. Johnson, supra; M. & O. R.R. Co. v. Bryant, supra; Stapleton v. L. & N. R.R. Co., supra.

Appellant urges that these authorities are controlling insofar as the question of negligent speed is concerned. We disagree and hold that it is on the question of speed, and speed alone, under the conditions

and circumstances existing at the crossing at the time of the collision that the issue of negligence in the operation of the train by appellant should have been and was properly submitted to the jury. The speed of the train is estimated by the various witnesses who testified, and their credible estimates and opinions vary from forty-five miles per hour by the fireman-engineer of appellant to sixty, seventy, and even eighty miles per hour by appellee's witnesses. Taking into consideration also the fact that all statutory warning signs and signals were in place and were given, and that additional bell and flashing light warnings were installed by appellant and were properly operating at the time in question, we are still faced with the inescapable question of whether the speed of the train constitutes negligence under the aforementioned circumstances, and under these additional conditions, that the track is traversed by a well traveled street crossing situated in the center of said town of Purvis, and said track curves so that the train cannot be seen because of said curve and an embankment on the east side of the right-of-way by the appellee until he had entered the right-of-way and had reached the Mississippi Law Stop Sign. Moreover, the actual distance from the crossing proper that the train could be seen as it approached from the north is in dispute.

It appears, therefore, that though the evidence of appellee's case is weak, as the lower court sagely observed, still it is sufficiently presented by appellee's proof to present the issue of fact of whether the speed at which the train was traveling, under the above enumerated circumstances and conditions, constituted negligence on appellant's part to be submitted to the jury for its determination. The question is not completely free from doubt, but we conclude that the proof is substantially sufficient to eliminate the operation of the scintilla of evidence rule. There is more than a scintilla of evidence.

It was for the jury to say whether the train, traveling at the speed it was going, had not yet reached a point where it could be seen by the appellee when he reached the Mississippi Law Stop sign on the right-of-way, and, furthermore, whether because of the speed of the approaching train the appellee was unable to safely cross the tracks at the rate of speed he was proceeding, but was struck because of the excessive speed of the approaching train. The jury resolved this factual question in favor of appellee. N.O. & N. E. R.R. Co. v. Anderson, 293 F. 2d 97; Donald v. Gulf M. & O. R.R. Co., 220 Miss. 714, 71 So. 2d 776; N.O. & N.E. R. Co. v. Lewis, 214 Miss. 163, 58 So. 2d 486; Gulf, M. & O. R. Co. v. Scott, 216 Miss. 532, 62 So. 2d 878; Donald v. G. M. & O. R. Co., 220 Miss. 714, 71 So. 2d 776; 74 C.J.S., Railroads, Sec. 711, p. 1306.

 ██ In conclusion and insofar as appellant's proposition (B) is concerned, which is that the lower court erred in overruling appellant's motion to set aside the jury verdict for the appellee, and entering judgment for the appellant because under the law and facts of this case the appellant is clearly entitled to judgment, we feel that the appellee's evidence goes beyond the scintilla degree rule and that upon the conclusion of appellee's testimony a question of appellant's negligent operation because of the speed of the train was sufficiently shown to submit that question of fact to the jury. This question was resolved by the jury against appellant.

The only basis upon which the jury verdict and judgment thereon could now be properly set aside is because it is against the overwhelming weight of the testimony. This, of course, depends in part upon whether the lower court was in error in not granting a peremptory instruction at the conclusion of appellee's testimony. We have already decided this question and see no reason for reversing our opinion now, because after carefully

reviewing all the evidence presented we are forced to hold that a new trial could not have been properly granted by the lower court if it had been requested on the ground that the verdict and judgment was against the overwhelming weight of the evidence.

The appellee is guilty of gross negligence and appalling disregard for his own safety, and the modest verdict of the jury, in spite of the serious and permanent injuries sustained by appellee, indicates that the jury realized that the negligence of the appellee was indeed great. We cannot, however, conscientiously hold that the negligence of the appellee, as great as it was, constitutes the sole, proximate cause of the accident and the injuries sustained by the appellee, because of the rate of speed at which the train was being operated under the aforesaid conditions and circumstances at the crossing. Therefore, the judgment of the lower court is hereby affirmed.

Affirmed.

*McGehee, C. J., and Gillespie, McElroy and Rodgers, JJ., concur.*