ROBERTSON, Presiding Justice,
for the Court:
Illinois Central Gulf Railroad (ICG) appeals from the judgment (based upon a jury verdict) of the Circuit Court of Smith County for $150,000 damages, in favor of Cheryl Burns, et al. The declaration originally was against ICG, Stegall Construction Company, Inc., S. E. Smith and F. B. Tinsley. A voluntary non-suit was taken against Gaines W. Stegall. At the close of the case, the court directed verdicts for defendants, Stegall Construction Company, Inc., S. E. Smith and F. B. Tinsley.
Although there were 11 grounds of negligence charged in the declaration, the court found for Defendant ICG on all grounds except whether ICG was negligent in maintaining and keeping down the vegetation along its east right-of-way in the vicinity of the private crossing to the Stegall lands west of the railroad tracks. This was the sole ground on which the court submitted the case to the jury.
About 5 o’clock on Sunday afternoon, October 3,1976, Herman Burns and two of his sons by his first wife were going bird hunting. Bums was driving his car from east to west to the Stegall property in Madison County on the west side of a private railroad crossing which had been constructed by ICG at Stegall’s request and upon the payment of $8,330 to it, to furnish ingress and egress to the Stegall property. Burns drove his automobile slowly onto the railroad right-of-way and stopped in the middle of the railroad tracks. At the same time, a long freight train of ICG with three diesel engines was proceeding north on these same railroad tracks.
F. B. Tinsley, the engineer, was seated on the east side of the lead engine, while Tyler, the brakeman, and S. E. Smith, the fireman, were seated on the west side of the engine. Smith’s only duty as fireman was to keep a lookout ahead. Tinsley and Smith testified that the train whistle was blowing continually and the headlight of the lead engine was on from 900 feet south of this private crossing. Tinsley and Smith testified also that when the train was four or five hundred feet south of the crossing they saw Burns slowly driving east to west on the road leading to Stegall’s property. He didn’t stop until he was in the middle of the railroad tracks. At that time the train was about 150 to 200 feet from him. Tinsley and Smith stated that they were looking directly at Burns and fully expected him to proceed on across the tracks, but that Burns never looked south, looking only to the north and northwest. The train hit Burns’ car, pushing it some distance north of the crossing before the engineer and fireman could stop the train by putting on all emergency brakes. Burns was instantly killed.
At the trial, the testimony was undisputed that Burns never looked to the south, the direction from which the train was coming. The testimony of Tinsley and Smith was that if Burns had looked south he could have clearly seen the train some distance away, that there were no obstructions to hinder his view, that the vegetation on the east side of the track had been poisoned and killed, and that as you approached the east apron of the railroad track you could see clearly down the tracks to the south.
Plaintiffs’ witness, David Cox, who was town marshal of the town of Madison at the time of the accident, testified that as you *639 approach the apron of the railroad tracks (about 20 feet from the east rail) “you can see clearly to the south”.
Plaintiffs’ witness, Eddie Clark, deputy sheriff of Madison County, testified that when the front bumper of a car was on the track you could see the marker lights 400 yards south of the crossing. Clark admitted that he couldn’t say how far down the track you could see 25 feet east of the crossing because he had never checked it from that distance.
Patricia Burns, the first wife of Herman Burns, and the mother of his three oldest sons, testified that she was not familiar with the site of the accident until about a week later when she went to visit it. They stopped their car to the east of the tracks, got out and looked around. She testified that you would almost have to have your car on the tracks to see anything, but she admitted that they did not get within 25 feet of the tracks nor sight down the tracks from 25 feet away. They left the scene without ever driving up to the tracks.
Cheryl Burns, the second wife, testified that from the east side of the tracks you could hardly see to the south but that the vegetation was dead-looking. Both Patricia Burns and Cheryl Burns testified that Herman Bums was very familiar with the southern part of Madison County and the Stegall land.
Gaines Stegall testified that Burns did not have permission to hunt on the Stegall property.
Colored pictures of the scene were introduced without objection and these pictures clearly show that, as you approach the railroad tracks from the east, you have a clear and unobstructed view to the south for several hundred yards. The pictures also clearly show that the vegetation on the railroad right-of-way had been poisoned because it was brown and dead-looking as contrasted to the green vegetation off of the right-of-way.
In New Orleans & Northeastern Railroad Co. v. Burney, 248 Miss. 290, 159 So.2d 85 (1963), this Court said:
“We concur and follow in the case at bar, insofar as the embankment’s obstruction of the appellee’s vision is concerned, thé rule as laid down in Russell v. Miss. Central R.R. Co. [239 Miss. 741, 125 So.2d 283], supra, and hold that appellee’s vision, as shown by the photographs, was not obscured by the embankment and weeds so that upon approaching the crossing from the east, or upon entering the right-of-way, appellee could see for considerable distance to the north up the appellant’s track and could see an approaching train thereon. Irrespective of the testimony of appellee’s witness that one had to be almost upon the tracks before you could see any distance to the north because of the embankment and weeds thereon, photographic exhibit 20E clearly and conclusively shows that a person standing in the middle of the railroad tracks can clearly see the truck parked below the Mississippi Law Stop sign apparently 150 to 200 feet away. The embankment and weeds are to the east and out of the line of vision. If a person standing 150 to 200 feet away from the Mississippi Law Stop sign can see, when looking southward, the post bearing that sign and the truck parked thereunder, it stands to reason that a person sitting in the truck can see to the north a person or train 150 to 200 feet away.
“Photograph 20B, moreover, shows that a person standing a few feet to the left and behind the Mississippi Law Stop sign can see a considerable distance further to the north up the railroad tracks. The exact distance was not measured, but only estimated. The photographs show it is a physical impossibility for the embankment to have prevented the appellee from seeing an undetermined distance to the north up the railroad tracks when he was beside the Mississippi Law Stop sign.” 248 Miss, at 306-07, 159 So.2d at 93.
Appellant, ICG, has assigned as error:
I. The verdict of the jury was against the overwhelming weight of the evidence and not supported by substantial competent evidence.
*640 II. The trial court erred in overruling ICG’s motion for a directed verdict and in refusing to grant ICG’s peremptory instruction.
III. The court erred in granting plaintiffs’ instruction number 19 and in refusing to grant ICG’s instructions numbers 21, 22 and 24.
IV. The court erred in overruling ICG’s motion for a judgment notwithstanding the verdict of the jury or, in the alternative, for a new trial.
This was a private crossing and Ste-gall, the landowner, testified clearly and unequivocally that he had not given Burns permission to hunt on his land. He did not want people hunting on his property. Burns actually was a trespasser. If he had gotten permission, he would have been a licensee. The rule is the same for a trespasser or a licensee; one must not willfully or wantonly injure. In Illinois Central Gulf Railroad Company v. Ishee, 317 So.2d 923 (Miss.1975), this Court quoted with approval from Dry v. Ford, 238 Miss. 98, 117 So.2d 456 (1960):
“The undisputed evidence for plaintiff would not warrant a jury in finding that appellees willfully or wantonly injured him. This is the recognized measure of the duty of a possessor of premises to a licensee. Bishop v. Stewart, 234 Miss. 409, 106 So.2d 899 (1958). Something more is required than mere inadvertence or lack of attention. There must be a more or less extreme departure from ordinary standards of care. The conduct must differ in quality, as well as in degree, from ordinary negligence, and must involve a conscious disregard of a known, serious danger. Prosser, Torts (2d Ed. 1955), Sec. 77. (238 Miss, at 102, 117 So.2d at 458).” 317 So.2d at 925. (Emphasis added).
The only issue submitted to the jury was whether ICG was negligent in maintaining its right-of-way, that is, whether vegetation obstructed the view of Burns in seeing the approaching train or whether vegetation obstructed the view of the train’s engineer in seeing Burns. Besides the undisputed testimony of the engineer and fireman that Burns never looked to the south, the evidence is just overwhelming that both Burns and ICG had an unobstructed view down the railroad tracks to the south for over 1000 feet. The testimony and exhibits prove beyond peradventure that ICG was not negligent in any shape, form or fashion in maintaining its right-of-way at this rural private crossing in southern Madison County.
Both the first and second assignments of error are well taken.
The trial court erred in overruling ICG’s motion for a directed verdict; it also erred in refusing to grant ICG’s peremptory instruction.
Also, the verdict of the jury was against the overwhelming weight of the evidence.
The judgment of the trial court is, therefore, reversed and judgment rendered here for the appellant.
This case was considered by a conference of the judges en banc.
REVERSED AND RENDERED.
PATTERSON, C. J., SMITH, P. J., and SUGG, WALKER, BROOM and LEE, JJ., concur.
LEE, J., PATTERSON, C. J., and SUGG and BROOM, JJ., specially concur.
BOWLING and HAWKINS, JJ., dissent.